**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0528n.06

No. 06-4407

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 02, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| *Plaintiff-Appellee*, | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| v. | ) | OHIO |
| | ) | |
| JOSÉ C. MARTINEZ, JR., | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE: COLE and GIBBONS, Circuit Judges; and CLELAND, District Judge.[*]

**CLELAND, District Judge.** Defendant-Appellant José C. Martinez, Jr., was convicted by a Toledo, Ohio, jury of one count of conspiracy—with family members and several others—to distribute and to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841, 846, and five counts of unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b). On appeal, he asserts that the district court erred in denying his motion to sever his trial from that of two of his co-conspirators. He also claims his sentence is "procedurally unreasonable" because at sentencing the district judge did not explicitly reject his contention, arguably presented in his sentencing memoranda, that a sentencing variance was warranted based on his history of *grand mal* seizures. We AFFIRM the judgment of the district court.

---

[*]The Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

Martinez was a high-level distributor of cocaine in the Toledo, Ohio, area from approximately 2001 until 2005. He was charged in six counts of a 50-count, 21-defendant indictment alleging a vast drug distribution conspiracy. Along with his brother, John A. Martinez ("John"), and his father, José C. Martinez, Sr. ("Jose Sr."), Martinez would purchase large quantities of cocaine and marijuana via Texas from distributors, including Brian D. Summers, Ricardo Medrano, and José J. Mendez-Vargas. Martinez then sold the drugs to mid-level local dealers, including Antwan L. Wynn, Ruben Vargas, and Anthony Hobbs.

Martinez filed a nonspecific "Motion to Join Applicable Co-Defendants Motions," as well as a motion specifically joining in co-defendant Darren E. Newman's motion to sever. In a pretrial order, the magistrate judge denied the motion to sever without prejudice to renewal. At a pretrial conference Martinez renewed the motion, and the court denied it; he renewed it again after the close of the government's case, and it was denied once more. After Martinez, his brother, and his father all rejected offers from the government to plead guilty, they were tried together and convicted of varying charges. John was convicted on five counts (conspiracy, possession with intent to distribute cocaine, and three counts of unlawful use of a communication facility) and acquitted on one (possession with intent to distribute crack cocaine).[1] José Sr. was convicted on one count of

---

[1]We affirmed John's conviction in *United States v. Martinez*, 302 F. App'x 379 (6th Cir. 2008). John's appeal, originally consolidated with Martinez's, was severed in order to accommodate Martinez's repeated motions for an extension of time to file his opening brief. John did not raise on appeal either of the arguments considered here.

unlawful use of a communication facility and acquitted on the conspiracy charge as well as on another unlawful use count.

The presentence report calculated a total offense level of 40—using a base offense level of 36 and a four-point enhancement for Martinez's role as an organizer or leader of five or more participants—and a criminal history category I. Martinez filed two sets of objections to the report. Among other objections, in his first filing, he argued: "Whatever the sentence, we would respectfully request this Court to recommend a minimum security facility because of Jose's [sic] *grand mal* seizures, which put him at greater risk." This first filing contained no reference to the medical condition under the section entitled "Variance," but it did indicate that "health considerations" should be taken into account in formulating the ultimate sentence. The second set of objections state: "The defendant requests, pursuant to U.S.S.G. Sections 5H1.3 and 5H1.4, that the court depart downward, based on his considerable medical issues relating to seizure disorder." Those objections, too, list "health considerations" in Martinez's concluding request for an eight-to-ten-year sentence.

The district court *sua sponte* reduced Martinez's exposure by nearly nine years, departing four levels downward at sentencing to a base level of 32. The court reasoned that the same base offense level should be used for the two brothers because they were "relatively equally culpable." The court then applied the four-point enhancement, and arrived at the range of 188 to 235 months based on a total offense level of 36.[2] The court indicated at the hearing that it had read Martinez's

---

[2]The guideline range as originally calculated was 292 to 365 months. The government objected to this substantial departure as explained by the district court, but did not press the issue in a cross-appeal.

sentencing memoranda, that it had "looked at the guidelines and . . . looked clearly and extensively

at [§ 3553(a)]," and that it had considered Martinez's background. The court imposed a sentence

of 220 months on count one and 48 months on each of the other counts, all of which were to be

served concurrently. Despite repeated opportunities to raise additional objections or to focus the

court's attention on certain issues during the hearing, and relatively lengthy statements from

Martinez himself, at no time during the sentencing did Martinez or his counsel verbally address his

history of seizures.

## II. DISCUSSION

The district court did not clearly abuse its discretion in denying Martinez's motion to sever,

and neither erred nor abused its discretion in silently rejecting the seizure disorder basis for a

variance.

### A. Severance

We review the district court's denial of a motion to sever for clear abuse of discretion.[3]

*United States v. Caver*, 470 F.3d 220, 237 (6th Cir. 2006) (citing *United States v. Beverly*, 369 F.3d

516, 534 (6th Cir. 2004)); *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993); *United States v.*

*Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987).

Federal Rule of Criminal Procedure 8(b) provides:

The indictment or information may charge 2 or more defendants if they are alleged
to have participated in the same act or transaction, or in the same series of acts or

---

[3]By renewing the motion at the close of the government's case, Martinez's counsel preserved this issue for review. *Caver*, 470 F.3d at 237 n.8; *see United States v. Allen*, 160 F.3d 1096, 1106 (6th Cir. 1998).

transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Interpreting Rule 14, the Sixth Circuit has observed that "[a]s a general rule, persons jointly indicted should be tried together." *Causey*, 834 F.2d at 1287; *accord Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008); *United States v. Gardiner*, 463 F.3d 445, 472 (6th Cir. 2006); *Harris*, 9 F.3d at 500. This is because joint trials serve society's interest in the speedy and efficient resolution of cases when the "charges will be proved by the same evidence and result from the same acts." *Caver*, 470 F.3d at 238 (quoting *Beverly*, 369 F.3d at 534) (internal quotation marks omitted).

"[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Examples of such "serious risk[s]" include where evidence is admissible against one defendant but not another, where jointly tried defendants have "markedly different degrees of culpability," or where exculpatory evidence would be inadmissible in a joint trial. *Id.* However, there is no test or exclusive list of putative prejudices, as "[t]he risk of prejudice will vary with the facts in each case." *Id.* Risk of simple prejudice is insufficient to sever the trials of co-defendants; the prejudice must be "'compelling, specific, and actual,'" *Gardiner*, 463 F.3d at 473 (quoting *United States v. Saadey*, 393

F.3d 669, 678 (6th Cir. 2005)), or "substantial" or "undue," *Caver*, 470 F.3d at 238 (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)) (internal quotation marks omitted). No matter the adjective employed, to prevail on appeal whatever prejudice a defendant endured as the result of the denial of his severance motion must be something more than the run-of-the-mill, plain vanilla prejudice that is incident to, or at least likely to arise in, any criminal trial involving more than one defendant.

It is apparent from the record that this case involved no such special or heightened prejudice, and we find that the district court did not clearly abuse its discretion.

In essence, the foundation of Martinez's contention of substantial prejudice is that he and his co-defendant relatives were involved in distinct conspiracies. In support of this claim, he states that he and his brother, John, "were more competitors than conspirators," and he cites anecdotes of price competition. A mid-level distributor, Hobbs, testified at trial that he purchased drugs from both brothers separately, and one of the suppliers, Medrano, testified that he refused to distribute to Martinez, preferring to deal only with John. Martinez additionally relies on Hobbs's inability to substantiate his assertion that John received some of his cocaine from Martinez. He also makes much of his own absence from certain drug transactions, specified at length in the indictment and at trial, which involved John and other conspirators at a Red Roof Inn in December 2002.

Although Martinez's brief generically touches upon some of the ways a defendant might be prejudiced, Martinez focuses his argument on evidence presented regarding the events at the Red Roof Inn. He says that included "highly inflammatory" evidence of crack cocaine production and firearm possession, and the conspiracy charge "imputed" his "assent" to that conduct

notwithstanding his absence from the hotel. In addition, the co-conspirator exception to the hearsay rule was used to "impute[]" statements made by his co-conspirators to Martinez, and because no limiting instruction was given to the jury regarding that testimony, it was substantially prejudicial.

Not one of these contentions reveals an abuse of discretion. First considering Martinez's predicate factual assertions, he has not shown that there were multiple conspiracies. "A defendant need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *United States v. Warman*, 578 F.3d 320, 333 (6th Cir. 2009) (quoting *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999)) (internal quotation marks omitted), *cert. denied*, 130 S. Ct. 1103 (2010); *accord United States v. Hodges*, 935 F.2d 766, 773 (6th Cir. 1991)); *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986). Martinez's absence from the Red Roof Inn on the days his brother was trafficking drugs there neither dictates nor even implies that he was not a member of the conspiracy, or that there were multiple conspiracies, or even that he was not aware the events took place. Assuming for the sake of argument that Martinez had no knowledge of those events, he could still be found liable for conspiracy so long as the government could prove beyond a reasonable doubt that he 1) agreed with one or more persons to distribute and possess with intent to distribute, 2) intended to join the conspiracy, and 3) participated in the conspiracy. *See United States v. Graham*, 622 F.3d 445, 449 (6th Cir. 2010) (citing *United States v. Paige*, 470 F.3d 603, 608-09 (6th Cir. 2006)). The record contains ample evidence to support a finding that Martinez did, in fact, conspire with his brother. The indictment indicates he was observed with his brother in a vehicle that was transporting marijuana, and he and his brother shared customers. Recorded conversations introduced at trial and testimony heavily support the finding that

Martinez and John were involved in various drug transactions together. The record discloses the extent of the conspiracy, too vast to fully describe here, and bears numerous examples that corroborate the charge in the indictment that there was a single conspiracy.[4]

Second, whether there was one or more conspiracies, while informative, does not control our analysis of the denial of the motion to sever. The government charged only one conspiracy. Even if there were multiple conspiracies, or if the facts of this case are susceptible to characterization as a "chain" conspiracy as Martinez contends, that does not compel a finding that the district court abused its discretion in denying the motion to sever. *Cf. United States v. Caporale*, 806 F.2d 1487, 1499-1500 (11th Cir. 1986) ("[E]ven if the evidence arguably establishes multiple conspiracies, there is no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment." (footnote omitted)). If, hypothetically, Martinez, his brother, and father had been a part of one conspiracy while each was also a part of several other conspiracies involving similar players and conspirators, the court could properly deny a motion to sever because the evidence at trial would be substantially the same, and therefore the interests of judicial economy, efficiency, and speedy trial would be served by combining the trials. The relevant inquiry to escape the otherwise preferable joinder is into prejudice, and while prejudice might be shown if Martinez was not involved in any

---

[4]If, in fact, Martinez and John were known to undercut each other's prices, that fact would not necessarily indicate they were not conspiring together. Although undercutting can give the impression of true competition to the buyer, it can also serve as a powerful sales tactic of a shrewd commercial operation. Furthermore, it is entirely common for businesses to engage in joint projects, simultaneously collaborating in some areas and competing in others.

conspiracy at all because he would be notably less culpable than his co-defendants, *see Zafiro*, 506 U.S. at 539, he is not aided in his attempt to persuade us of an abuse of discretion by arguing there was more than one conspiracy.[5]

Third, and dispositively, Martinez has failed to meet his burden of showing some specific, heightened prejudice that resulted from the joint trial. The supposedly "inflammatory" subjects raised in the Red Roof Inn encounter—crack cocaine and firearms—are simply not inordinately prejudicial. Similarly, we do not think that any statements admitted into evidence through the co-conspirator exception were substantially prejudicial: Martinez does not point to any statement in particular or explain why such admissions were unfairly prejudicial beyond noting his own absence from the hotel and the events that transpired there.

Juries are presumed to be able to sort through the evidence and to distinguish between different crimes and defendants in order to determine which counts as to which defendants the government has proven beyond a reasonable doubt, and which counts as to which defendants it has not. *Driver*, 535 F.3d at 427 (citing *Causey*, 834 F.2d at 1287-88); *Caver*, 470 F.3d at 238 (citing *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996)). Thus, the showing of substantial, undue, specific, compelling, or actual prejudice is necessary because it maps those areas in which a jury is likely to be incapable of conducting this sorting function. *Driver*, 535 F.3d at 427; *Caver*, 470 F.3d at 238. Further, we are convinced that there was no heightened prejudice partly because the jury in

---

[5]To the extent Martinez advances the argument that there were multiple conspiracies with no overlap between his conspiracy and his brother's conspiracy, we reject it. The government charged a single conspiracy, and for the reasons set forth below, the jury proved itself willing and able to discern who was a part of the conspiracy and who was not.

Martinez's case proved itself capable of wading through the evidence: Martinez's attorney argued that there was no single conspiracy. The jury was thoroughly instructed on what is necessary to convict a defendant of conspiracy. The jurors were given a specific limiting instruction that, while not focused on the hearsay rule, told them to distinguish between the different charges and defendants. It is a dicey proposition to divine why a particular jury voted a particular verdict, but it at least appears here that the jurors were able to absorb and follow those instructions. While Martinez was convicted on all counts, they specifically found that he was not responsible for trafficking in marijuana. John was acquitted of one count, and José Sr. was acquitted of two, including the conspiracy charge. Thus, it would seem that the jury was not so overwhelmed with the allegedly prejudicial "crack and guns" testimony that it felt driven to convict all defendants of all counts, or even to convict all defendants of the conspiracy count. *See Driver*, 535 F.3d at 427 ("There was no evidence that the jury was not able to heed the district court's instruction to consider separately the evidence against each defendant . . . .").

Martinez has not shown substantial prejudice, and the district court did not clearly abuse its discretion in denying the motion to sever.

## B. Sentence

In order to prevail on his argument that it was "procedurally unreasonable" for the district court not to grant a downward variance based on his medical condition, we would ordinarily require Martinez to clear the high bar of the plain-error test, and for two separate reasons. First, Martinez did not argue in the district court that the medical condition warranted a downward *variance*.

Case No. 06-4407
*United States of America v. José C. Martinez, Jr.*

Instead, his argument was that the seizure condition merited a downward *departure*.[6] Raising a basis

for a departure will not act to preserve an argument for a variance on that same basis. *See United*

*States v. Blue*, 557 F.3d 682, 687 (6th Cir. 2009) (citing *United States v. Santillana*, 540 F.3d 428,

433 n.1 (6th Cir. 2008)) (resolving argument for departure based on substantial assistance but finding

argument for variance on same grounds waived); *United States v. Vonner*, 516 F.3d 382, 391 (6th

Cir. 2008) (en banc) ("Nor is it the case that a request for a variance in the district court by itself

preserves *all* procedural and substantive challenges to a sentence." (emphasis in original)); *see also*

*United States v. Grams*, 566 F.3d 683, 686-87 (6th Cir. 2009) (explaining the difference between a

departure and a variance). Since Martinez has not preserved the variance argument, *see* Fed. R. Civ.

P. 51(b), we would normally review it for plain error, *see* Fed. R. Civ. P. 52(b); *Vonner*, 516 F.3d

at 385, 392 ("[W]e surely should apply plain-error review to any arguments for leniency that the

defendant does not present to the trial court.").[7]

Second, even if Martinez had argued for a variance in the district court based on his medical

condition, *Vonner* instructs that without a specific objection in response to the *Bostic* question, a

defendant's "challenge [to] the adequacy of the court's explanation for the sentence" is subject to

---

[6]Martinez's sentencing memoranda explicitly requested a departure (to the exclusion of any variance argument), and his concluding paragraphs merely summarized what had come before and suggested a sentence. Even if his cursory concluding paragraph were enough to preserve the variance argument for appellate review, *Vonner* compels application of the plain-error standard.

[7]Had Martinez aimed his argument on appeal at departure, it would not have been successful. The district court knew it could depart downward, as it did so to equalize the base offense level of the two brothers. The denial of a downward departure is reviewable only where "the district court was unaware of, or did not understand, its discretion to make such a departure," *Blue*, 557 F.3d at 687, and this is not such a case.

plain-error review. *Vonner*, 516 F.3d at 386 (citing *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004)); *see United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010) ("Where a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error."); *United States v. Simmons*, 587 F.3d 348, 353-58 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 2116 (2010). Here, as in *Vonner*, the court asked defense counsel after delivering the sentence, "Any objections to the sentence?" After the government objected to the base-offense-level departure, his attorney responded, "Only those as already noted." *See Vonner*, 516 F.3d at 386.[8]

However, successive panels of this court have stated that "we do not apply plain-error review unless a party asks." *United States v. Escalon-Velasquez*, 371 F. App'x 622, 623-24 (6th Cir. 2010); *accord United States v. Williams*, 641 F.3d 758, 763-64 (6th Cir. 2011); *United States v. Keith*, 363 F. App'x 377, 380 n.2 (6th Cir. 2010) (citing *United States v. Blackie*, 548 F.3d 395, 404 (6th Cir. 2008) (Sutton, J., concurring)). In those cases where we would apply plain-error review but for the absence of a request, the procedural reasonableness of a sentence is reviewed for abuse of discretion. *Escalon-Velasquez*, 371 F. App'x at 623-24. This practice has met with some criticism, *see Williams*, 641 F.3d at 770-73 (Thapar, J., concurring), and the presentation of this case reveals an additional complication in its administration. Although the government did not articulate a request

---

[8]In *Vonner*, the response was, "No, Your Honor," but our observation that "this answer did not undermine Vonner's right to appeal issues he had 'previously raised,'" implies that any distinction between a negative answer and a generically affirmative answer is immaterial. 516 F.3d at 386; *see Simmons*, 587 F.3d at 358 ("We hold that *Vonner* requires the application of plain-error review to procedural claims like this one, where a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review.").

for plain-error review in exactly those words, it certainly focused intently in its brief and at oral

argument on the fact that Martinez did not preserve the variance contention in the district court. This

is a far cry from the government's outright default on the allegation of error at issue in *Blackie*. *See*

*Blackie*, 548 F.3d at 404 (Sutton, J., concurring) ("The government never asked us to apply

plain-error review to this claim . . . . [T]he government failed to respond *at all* to this allegation of

error." (emphasis in original)). So, under the facts presented here, did the government "ask"

effectively enough for plain-error review? Which is the correct standard of review for this court to

apply?

These are interesting questions, but for another day. Martinez's challenge fails both under

plain-error review and the more lenient abuse-of-discretion standard. "In reviewing for procedural

reasonableness, a district court abuses its discretion if it 'commit[s] [a] significant procedural error

. . . .'" *United States v. Johnson*, 640 F.3d 195, 201 (6th Cir. 2011) (alteration in original) (quoting

*Gall v. United States*, 552 U.S. 38, 51 (2007)). Examples of unreasonable procedures include where

the district court miscalculates the guideline range, does not consider the § 3553(a) factors, or relies

on clearly erroneous facts. *Gall*, 552 U.S. at 51.

"It is well established that, as part of its sentencing procedure, a court must consider all

non-frivolous arguments in support of a lower sentence. However, our cases are less than clear as

to what must be the product of that consideration in order to allow for meaningful appellate review

of the court's reasoning." *United States v. Gunter*, 620 F.3d 642, 645-46 (6th Cir. 2010) (citation

omitted) (citing *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006)); *see United States v.*

*Pritchard*, 392 F. App'x 433, 442-43 (6th Cir. 2010) (Griffin, J., dissenting) ("*Wallace* was wrongly

decided . . . because it conflicts with the holding of [*Vonner*] . . . ."); *Wallace*, 597 F.3d at 805-06

(collecting and comparing cases both affirming and reversing sentences "where the district judge has

failed to fully explain the reason for the sentence"). From the confusion, and relying on the en banc

decision in *Vonner*, we distill that a district court need not formulaically consider and reject each and

every argument raised by a defendant, but must use a "functional" approach. *Gunter*, 620 F.3d at

646 (6th Cir. 2010); *accord United States v. Keller*, 498 F.3d 316, 326-28 (6th Cir. 2007); *see Rita

v. United States*, 551 U.S. 338, 358 (2007) (upholding "brief but legally sufficient" explanation of

sentence); *Vonner*, 516 F.3d at 386-87 (holding that sentencing court's "brief explanation" was not

"ideal" because "[i]t did not specifically address all of [the defendant]'s arguments for leniency," but

finding "any potential error was not 'plain'").

> On appeal, we must determine whether, based on the entirety of the sentencing
> transcript and written opinion, if any, we are satisfied that the district court fulfilled
> this obligation. We are to focus less on what the transcript reveals that the court said
> and more on what the transcript reveals that the court did.

*Gunter*, 620 F.3d at 646; *see United States v. Petrus*, 588 F.3d 347, 354-55 (6th Cir. 2009) (citing

*United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009)).

Martinez has not shown a significant procedural error. The decision in *United States v. Ivey*,

307 F. App'x 941 (6th Cir. 2009), is illustrative. There we considered, albeit in an unpublished

opinion, a case factually similar to Martinez's. Ivey argued on appeal "that the district court failed

to consider his request for a downward variance based on his medical conditions." 307 F. App'x at

943. Ivey primarily raised a different argument at the sentencing hearing, but in his written

objections referred to certain medical problems, and "the district court did not specifically refer to

Ivey's reported medical conditions." *Id.* Finding that the sentencing court adequately explained other sentencing factors, we wrote, "[w]hile we might have briefly addressed Ivey's reported medical conditions were we sitting as the sentencing court, we do not find that the district court abused its discretion here." *Id.* at 943-44. We said that because Ivey's medical conditions were unsubstantiated, and he had not presented reasons why the conditions necessitated a lower sentence, the district court was not required to explicitly reject it. *Id.* at 944.

*Ivey*'s reasoning is persuasive. The district court indicated on the record that it had reviewed Martinez's sentencing memoranda the morning of the sentencing, and so must have been aware of the medical assertion.[9] Neither Martinez nor his attorney raised any medical condition in each of their arguments at sentencing.[10] Significantly, nowhere did Martinez present an explanation for *why* his seizure disorder merited a lower sentence, for example, by elaborating upon why the Bureau of Prisons could accommodate his seizures for eight to ten years but not for twenty. The court noted for the record that it had, among other things, "looked clearly and extensively" at the § 3553(a) factors, including Martinez's "background," the "need for punishment," to "protect the public," and "for rehabilitation and training" before sentencing Martinez. *See* 18 U.S.C. § 3553(a)(1)-(2).

---

[9]The court was also aware of his seizure condition after witnessing Martinez seize during closing arguments at trial. Consequently, and unlike in *Ivey*, we do not question that the disorder was substantiated.

[10]A case involving complete silence on the record from counsel and the sentencing judge stands in contrast to a case where counsel raises an issue at the hearing and the court nevertheless fails to address it, a circumstance that can lead to a finding of plain error. *See Wallace*, 597 F.3d at 802-03, 806; *see also Simmons*, 587 F.3d at 361 ("[O]ur case law and the Federal Rules of Criminal Procedure indicate that, as a procedural matter, the district judge must generally speak to arguments that are *clearly* presented and in dispute." (emphasis added)).

Case No. 06-4407
*United States of America v. José C. Martinez, Jr.*

Martinez's undeveloped medical argument that some leniency should be afforded because of his seizure disorder was "conceptually straightforward," the judge mentioned the § 3553(a) factors, and the transcript reflects that the judge had looked at Martinez's history and listened to and read his arguments. *Vonner*, 516 F.3d at 388; *see Ivey*, 307 F. App'x at 943-44; *United States v. Carpenter*, 359 F. App'x 553, 558 (6th Cir. 2009) (holding district court did not abuse its discretion by not varying downward on account of health problems). Although this may not have been an "ideal" sentencing hearing, *Vonner*, 516 F.3d at 386, and "the judge might have said more," *Rita*, 551 U.S. at 359, we cannot say that the district court abused its discretion by its silence on the topic of Martinez's medical condition.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentence and judgment of the district court.