NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0943n.06

No. 11-3711

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 23, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| CAESAREA DEVELLE JAMES, JR., | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

O P I N I O N

BEFORE:  KEITH, McKEAGUE, and DONALD, Circuit Judges.

**McKeague, Circuit Judge.**  This case arises from Defendant-Appellant Caesarea James Jr.'s fraudulent financing of two different residences —one in Michigan and one in Ohio—in December 2006.  In connection with these two transactions, a jury convicted James of both wire fraud and mail fraud.  Also in connection with these transactions—but in a separate trial before a different jury— James was convicted of making a false statement in bankruptcy.  The district court sentenced James to fifty-one months' imprisonment.  James charges the district court with four errors in handling his wire fraud, mail fraud, and fictitious instruments trial.  In addition, James appeals the sufficiency of the evidence pertaining to his conviction for making a false statement in bankruptcy.

Five issues are before this court on appeal.  First, we consider whether the district court's denial of James's proposed jury instruction deprived him of his constitutional right to present a defense. Second, James claims that the district court erred in conducting a joint trial on wire fraud,

mail fraud, and fictitious instrument charges. Third, James argues that the evidence of "other wrongs" was improperly admitted by the district court. Fourth, James claims that the district court's obstruction of justice sentencing enhancement based on his filing of fraudulent documents with the IRS was inapplicable. Finally, James argues that there was insufficient evidence to convict on the making false statements in bankruptcy charge. We **AFFIRM** the district court in all respects.

### A. Factual Background

In 2006, James acquired a residence in Clarkston, Michigan (the "Michigan residence") with two loans from WMC Mortgage Corporation ("WMC") totaling $650,000. Exactly two weeks later, James acquired a residence in Springboro, Ohio (the "Ohio residence") with two loans from Guaranteed Rate, Inc. ("Guaranteed") totaling $715,000.

To obtain financing from both lenders for both residences, James provided WMC and Guaranteed with representations of his income, employment, liabilities, and occupancy. In addition, James provided both lenders with a copy of a federal tax return for 2005 in which he represented substantial income. James fully financed both the Michigan and the Ohio residences, and he defaulted on both mortgages almost immediately. Notably, the 2005 tax return James provided WMC and Guaranteed was in stark contrast to a car loan application that James had submitted four months earlier, where he claimed a much more modest income.

James filed for bankruptcy in 2007, thereby triggering an automatic stay and delaying foreclosure proceedings against the Michigan and Ohio residences. After the bankruptcy stay was lifted against the Ohio residence, the bankruptcy trustee began foreclosure proceedings. James outbid Guaranteed at the sheriff's sale for the Ohio residence and won the auction. James paid the

10 percent down payment on the Ohio residence with a fake check that soon bounced. James filed for bankruptcy again in 2009, while the 2007 bankruptcy petition was still pending. On his 2009 petition, James answered "N/A" in response to the form's instruction to cite all prior bankruptcy cases filed within the last eight years.

Shortly thereafter, the FBI investigated James's conduct regarding the Michigan and Ohio residences. Among other things, the investigation revealed "numerous inconsistencies between the various fraudulent documents that James had created, including the loan applications and bogus tax documents" used to finance the Michigan and Ohio residences. (Plaintiff-Appellee Br. at 13). James was subsequently indicted for wire fraud and mail fraud based on the fraudulent documents that James had created in connection with the Michigan and Ohio residences. Additionally, James was charged with passing a fictitious obligation based on the fake check he used at the sheriff's sale.

With respect to the fraud allegations, the indictment charged that James had submitted a 2005 tax return to WMC and Guaranteed that was never filed with the IRS. Twelve days after James's indictment and arrest, he mailed a package of documents to the IRS. The package included: (1) a copy of a 2005 tax return that James submitted to WMC and Guaranteed; (2) a W-2 form from an employer called National Security Computer in support of James's income claim; and (3) a letter from accountant Brian Curry saying that he prepared and filed James's 2005 tax return in 2006.

Pursuant to a superseding indictment, James also faced a fourth charge of making false oaths during a bankruptcy proceeding. Before James proceeded to trial, he filed motions to sever his four-count indictment into three separate trials. The district court denied James's motions in a well-reasoned opinion. Ultimately, James received two trials. First, James was tried and convicted of

making false statements in bankruptcy. James then proceeded to a second trial on the wire fraud, mail fraud, and passing a fictitious obligation charges. At trial, James's main defense was that no wire or mail fraud occurred because Guaranteed and WMC were not defrauded. Rather, James argued, Guaranteed and WMC "were 'eyes wide open' partners in the scheme, and, as co-conspirators, could not be victims." James also submitted proposed jury instructions to this effect, which the district court rejected. Ultimately, a second jury convicted James of wire and mail fraud, but was unable to reach a verdict on the fictitious instrument charge.

## B. Analysis

James first contends that the district court abused its discretion by refusing to provide his requested modified jury instruction. Specifically, James argues that "[t]he court should have allowed a defense requested instruction indicating that if the lenders were complicit in a defendant's conduct, that they could not be 'victims' of fraud." Defendant-Appellant Br. at 6. James further charges that the district court's refusal to utilize his proposed jury instruction deprived him of his constitutional right to present a defense.

A district court's refusal to give a requested jury instruction is reviewed for an abuse of discretion. *United States v. Henderson*, 307 F. App'x 970, 978 (6th Cir. 2009). Jury instructions are reviewed "as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Franklin*, 415 F.3d 537, 553 (6th Cir. 2005) (internal citations omitted). A refusal to give a requested jury instruction is an abuse of discretion only if the instruction is: "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it

substantially impairs the defendant's defense." *Id*. A claim that a defendant's constitutional right to present a defense has been violated is an issue of law that is reviewed de novo. *Fleming v. Metrish*, 556 F.3d 520 (6th Cir. 2009.

The district court did not abuse its discretion in denying James's proposed jury instruction for three reasons. First, James's proposed instruction was not legally sound. Second, James's ability to present a legitimate defense was not substantially impaired. Finally, because the record reveals that James enjoyed the opportunity to present his defense at trial, there was no constitutional violation.

At trial, James's counsel presented his theory of the case — a "blame the victim" defense — at length. This defense has not fared well in the Sixth Circuit. *See United States v. Winkle*, 477 F.3d 407, 418 (6th Cir. 2007). Further, this defense has been roundly rejected by this Court's sister circuits. *See, e.g., United States v. Thomas*, 377 F.3d 232, 241-42 (2d Cir. 2004); *United States v. Rennert*, 374 F.3d 206, 213 (3d. Cir. 2004); *United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007). Moreover, nothing in the record established that the lenders had knowledge of James's fraud.

James's proposed jury instructions contained the same legal infirmities as his defense. Specifically, James submitted modified Pattern Sixth Circuit Instruction 2.09 on deliberate indifference. The original pattern instruction on deliberate indifference begins with the sentence: "Next, I want to explain something about proving a defendant's knowledge." The pattern instruction continues: "No one can avoid responsibility for a crime by deliberately ignoring the obvious." In contrast to the original, James's proposed instruction would have omitted the prefatory sentence and began with the second. The effect, as the Government points out, was to make James's "proposed

jury instruction read as if the victim lenders were accused of a crime and on trial." Plaintiff-Appellee Br. at 16. As discussed above, this spin on the pattern instructions does not comport with the law of this Circuit or others. Accordingly, the district court did not abuse its discretion in denying James's proposed jury instructions. Not only were they legally misleading, but they also did not substantially impair James's opportunity to offer a defense. Moreover, because James had ample opportunity to present his defense at trial, no constitutional right was implicated.

James next argues that the district court abused its discretion in denying his motion for severance. This Court reviews a district court's denial of a defendant's motion for severance for an abuse of discretion. *United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011); *United States v. Carver*, 470 F.3d 220, 237 (6th Cir. 2006).

Federal Rule of Criminal Procedure 8(a) provides that multiple offenses may be joined into a single indictment so long as the offenses are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). This Court construes Rule 8(a) in favor of joinder and evaluates whether joinder was appropriate based upon the four corners of the indictment. *United States v. Deitz*, 577 F.3d 672, 691 (6th Cir. 2009).

Under Federal Rule of Criminal Procedure 14(a), a district court may order separate trials for a defendant facing a multi-count indictment if the "joinder of offenses . . . appears to prejudice a defendant . . . ." Severance is required only when there is a serious risk of undue prejudice. *See Zafro v. United States*, 506 U.S. 534, 539 (1993). "In determining whether a defendant suffered prejudice, courts consider such factors as whether spillover evidence would incite or arouse the jury

to convict on the remaining counts, whether the evidence was intertwined, the similarities and differences between the evidence, the strength of the government's case, and the ability of the jury to separate the evidence." *United States v. Dale*, 429 F. App'x 576, 578 (6th Cir. 2011).

On appeal, James complains that the district court wrongly denied his motion to sever the fictitious instruments charge from the wire and mail fraud charges. As the Government aptly points out:

> there was a natural and logical connection between Counts 1, 2, and 3. James fraudulently bought the Ohio and Michigan properties in December 2006. Those two purchases were the basis for the wire fraud and mail fraud charges (Counts 1-2). From that point on, James compounded his fraud by repeatedly trying to thwart the foreclosure process for the Ohio property and stay in the house. He filed for bankruptcy in 2007, which delayed the process. When the Ohio property reached the sheriff's sale, James outbid the lender and won the auction. He then presented a fake check from a defunct company to purchase the property at auction, thereby triggering the fictitious obligation charge in Count 3.
> In short, James bought the houses fraudulently (Counts 1 and 2), then blocked the sheriff's sale with a fraudulent check (Count 3). The charges involved the same property, the same victim, and the same motive for James. There is also a similar character to the offenses for they all involve fraudulent statements and documents created by James. There is also an overlap in the evidence, namely the witness for the lender who was victimized by the offenses.

Plaintiff-Appellee Br. at 10-11.

The district court's denial of James's motion to sever was not an abuse of discretion. As a preliminary matter, given the legally and factually intertwined nature of Counts 1-3, joinder was proper under Rule 8(a). Moreover, Rule 14(a) is permissive, not mandatory. *See* F.R.C.P. 14 (a) (providing that a district court "may" order severance). Reviewing courts therefore typically find an abuse of discretion only where a district court should have recognized that joinder is likely to

prejudice the defendant in a way that, for example, "incite[s] or arouse[s] the jury to convict on the remaining counts . . . ." *Dale,* 429 F. App'x at 578.

Here, nothing in the record indicates that the district should have anticipated that Count 3 would unfairly prejudice James. In fact, a retrospective analysis reveals that James ultimately benefitted from a jury that was not "incite[d] or arouse[d]," *id.*, by the evidence before it: the jury convicted James of Counts 1 and 2 but failed to reach a verdict as to Count 3, thereby resulting in a dismissal of that charge. As the Government notes, "[t]he hung jury and ultimate dismissal [of Count 3] demonstrates that the jury was able to independently consider the elements and merits of each of the charges." Plaintiff-Appellee Br. at 12. Accordingly, the district court did not abuse its discretion in denying James's motion to sever.

James also contends that the district court "erred in allowing several instances of 'other acts evidence,' which was not relevant, was not admitted for an appropriate purpose, and which was highly prejudicial." Defendant-Appellant Br. at 24. In particular, James complains of two errors. First, James argues that "the Government was permitted to introduce evidence that James applied for a vehicle and provided false information to obtain the loan for that vehicle." *Id.* at 27. Second, James asserts that the "Government also introduced improper 404(b) evidence that James had failed to make mortgage payments on his homes." *Id.* at 28. The Government counters that both pieces of evidence were introduced as direct evidence rather than as evidence of other wrongs.

This court reviews a district court's decision to admit direct evidence for an abuse of discretion. *See United States v. Middleton*, 246 F.3d 825, 838 (6th. Cir. 2011). Direct evidence, however, is not the same as "other wrongs" evidence, also known as 404(b) evidence. *See United*

*States v. Cooney*, 26 F. App'x 513, 525 (6th Cir. 2002) ("[D]irect evidence . . . is not Rule 404(b) evidence at all."). Federal Rule of Evidence 404(b) provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

To be admissible under Rule 404(b), "other acts" evidence "must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Wynn*, 987 F.2d 354, 357 (6th Cir. 1993) (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)). This Court has "a longstanding intra-circuit conflict regarding the appropriate standard of review for evidentiary decisions under Rule 404(b) . . . ." *See, e.g.*, *United States v. Clay*, 667 F.3d 689, 703 (6th Cir. 2012) (Kethledge, J., dissenting). Some panel decisions review 404(b) evidence de novo. *Id.* Others, however, apply the more deferential abuse of discretion standard that this Circuit utilizes in every other evidentiary ruling. *Id; see also United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (citing *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

Both approaches, however, undertake a three-step process in reviewing the district court's evidentiary determinations. First, the panel reviews the factual determination that the other act actually occurred. Second, the panel reviews the legal determination that the acts were admissible for a permissible 404(b) purpose. Third, the panel reviews the district court's determination that the probative value of the evidence is not substantially outweighed by unfair prejudicial impact. *Compare Clay*, 667 F.3d at 693 with *United States v. Haywood*, 280 F. 3d 715, 720 (6th Cir. 2002).

We assume here that the district court's decision to admit the car loan evidence was done so under Rule 404(b). As James explains: "the Government was permitted to introduce evidence that James applied for a vehicle and provided false information to obtain the loan for that vehicle." Defendant-Appellant Br. at 27. James's application for the car loan took place approximately four months before the fraudulent loans for the Ohio and Michigan residences. Accordingly, the Government's argument that the car loan testimony was "directly relevant evidence of James's fraud with the home lenders, as it contradicts James's contemporaneous representations about his assets and income to the home lenders," Plaintiff-Appellee Br. at 14, is not persuasive. The facts indicate a four-month span between the time that James applied for his car loans and his mortgages.

Assuming that the car loan evidence is 404(b) evidence, the district court properly admitted the evidence under either an abuse of discretion or a de novo standard. The testimony regarding the car loan established that James provided a different income, a different employer, and a different residence than when he applied for loans on the Ohio and the Michigan residences. The district court admitted the evidence on the grounds that it established "knowledge or lack of mistake or intent." First, the record contains sufficient evidence that James actually took out this fraudulent car loan. Second, this evidence was admissible "other acts" evidence under Rule 404(b) because it addresses "conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *Wynn*, 987 F.2d at 357 (quoting *Blankenship*, 775 F.2d at 739). Finally, "[e]vidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Bell*, 516 F.3d at

441-42. In this case, the district court did not abuse its discretion in determining that the car loan established "knowledge or lack of mistake or intent." Even under de novo review, James's car loan was properly admitted to show James had knowledge of his income, which was different from the income he provided on his loans to WMC and Guaranteed. In the alternative, the car loan evidence also suggests a lack of mistake when James subsequently filed applications for loans from WMC and Guaranteed stating a substantially different income. Accordingly, the district court's admission of the evidence is affirmed under either standard of review.

Additionally, the district court's admission of evidence regarding James's failure to pay his mortgage is direct evidence as to whether James passed a fictitious instrument. At trial, James's counsel addressed whether James's failure to pay his mortgage implicated the wire fraud and mail fraud charges, arguing that failure to pay a loan after signing for one can "come from a variety of reasons, like losing your employment. It doesn't necessarily mean he didn't have the money up front." Though James's failure to make the mortgage payments occurred *after* the basis for the wire and mail fraud charges, James defaulted on the mortgage *before* the grounds for the fictitious instruments. James only wrote the fake check at the sheriff's sale after his property went into foreclosure due to his own default. Accordingly, James's default on his mortgage goes directly to the question of whether James had the requisite funds to write a check for a 10 percent down payment at the sheriff's sale.

However, even assuming that the evidence regarding James's failure to make his mortgage payments is 404(b) evidence, the district court's admission of the evidence was proper under either standard of review. First, the record reflects that James defaulted on his mortgage within 60 days.

For the same reason, this evidence was admissible "other acts" evidence under Rule 404(b) because it addresses "conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried," *Wynn*, 987 F.2d at 357. Not only did the default occur within two months of the mail and wire fraud charges, but it also was a necessary prerequisite to the fictitious instruments charge. Finally, because the default evidence provided a vital foundation to James's fictitious instruments charge, this evidence was more probative than prejudicial and was properly admitted under Rule 403. Accordingly, under either an abuse of discretion or a de novo standard, the district court properly admitted this evidence.

James also objects to the district court's application of a 2-level sentencing enhancement for obstruction of justice pursuant to U.S.S.G. § 3C.1.1, note 4(C). A district court's factual findings in calculating sentencing guidelines ranges are reviewed for clear error, but legal conclusions are reviewed de novo. *United States v. Thompson*, 586 F.3d 1035, 1038 (6th Cir. 2009).

The obstruction of justice enhancement applies if "(A) the Defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the Defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." U.S.S.G. § 3C1.1. Application Note 4 provides examples of conduct that trigger this enhancement, including "producing or attempting to produce a false, altered, or counterfeit document or record <u>during an official investigation **or** judicial proceeding</u>." U.S.S.G. § 3C1.1, Appl. Note 4(C) (emphasis added).

The district court did not err in applying the obstruction of adjustment enhancement here. Shortly after the indictment issued, James filed a false tax return, a fake letter from an accountant, and a fabricated W-2 form with the IRS. James admits to filing these documents after the indictment issued, but he "submits that any filings with the IRS were irrelevant to this case, and therefore were not designed to obstruct or sidetrack the investigation." Defendant-Appellant Br. at 28. James also argues that this conduct was irrelevant to the instant offense. *Id.*

With regard to James's first argument, he fails to adequately engage the plain language of Application Note 4(C). Application Note 4(C) makes clear that the enhancement applies "during an official investigation **or** judicial proceeding." U.S.S.G. § 3C1.1, Appl. Note 4(C) (emphasis added). To begin, James's argument that there was no ongoing investigation is untrue, as evidenced by the Government's superseding indictment. Further, because James admits to filing false documents with the IRS *after* the indictment issued, his conduct falls squarely within the "judicial proceeding" aspect of the Application Note.

Finally, James's conduct was directly relevant to the indictment. As the Government persuasively submits:

> James's creation and filing of new false tax documents immediately after the [i]ndictment was an attempt to fabricate evidence that could support his position and rebut the government's allegations. The filing of the documents with the IRS was an attempt to add a false cloak of legitimacy to the earlier fraudulent documents.

Plaintiff-Appellee Br. at 25. Accordingly, the district court did not clearly err in adding the obstruction of justice enhancement to James's sentence.

James next submits that the Government failed to present sufficient evidence to convict him of violating 18 U.S. § 152(3). This Court reviews sufficiency of the evidence by evaluating whether, after viewing the evidence in favor of the prosecution, any rational trier of fact could have found that the Government proved all elements of the offense. *See United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008). Section 152(3) forbids "knowingly and fraudulently mak[ing] a false declaration, certificate, verification, or statement under penalty of perjury . . . in or in relation to any case under title 11 . . . ."

The record reveals that there was sufficient evidence to convict James of violating § 152(3). To begin, James filed for bankruptcy four times in a six-year period. James first filed bankruptcy petitions in Michigan in 2003 and 2004. Then, after purchasing the Ohio and Michigan residences, James filed a petition for bankruptcy in Ohio in 2007 and obtained a discharge of his debts in 2008. On August 17, 2009, while his 2007 petition for bankruptcy was still pending, James filed yet another petition for bankruptcy (the "2009 bankruptcy petition"). On his 2009 bankruptcy petition, James wrote "N/A" under the heading "All Prior Bankruptcy Cases Filed Within Last 8 Years" and signed the 2009 petition under penalty of perjury. Collectively, these facts establish that James knowingly and fraudulently made a false statement in relation to his 2009 bankruptcy petition.

James's arguments to the contrary are unavailing. First, James argues that the Government failed to establish that "it was James that signed and filed the 2009 bankruptcy petition from which the alleged false statement was taken, which is the basis of this count of the indictment." Defendant-Appellant Br. at 17. Yet, as the Government makes clear, there is substantial evidence to the contrary. To begin, FBI testimony established that the Social Security numbers used on the

bankruptcy filings were associated with James. Additionally, the trustee for the 2007 bankruptcy affirmatively identified James as the individual who filed the 2007 bankruptcy petition. Moreover, the trustee for the 2009 bankruptcy confirmed that the same Social Security number was used for both the 2007 and the 2009 bankruptcy proceedings. Given these facts, a rational juror could have found that James was the individual who signed and filed the 2009 bankruptcy petition.

Second, James argues that "a bankruptcy case [must] be 'pending' at the time of false statement." Defendant-Appellant Br. at 18. James's argument is incompatible with a plain reading of the statute, which nowhere imposes a sequential requirement for when the false statement must be made. *See* 18 U.S.C. § 152(3) (prohibiting only the making of false statements "in or in relation to any case under title 11."). Additionally, the Sixth Circuit case James cites is inapposite. *See United States v. Overmyer*, 867 F.2d 937, 949 (6th Cir. 1989). In *Overmyer*, the Court made only the noncommittal observation that the bankruptcy proceedings in the first case had commenced at the time of the second filing. Not only is this observation equally true in James's case, it is also beside the point. Both the statute and this Circuit's law indicate that a rational juror could find adequate evidence to convict James of violating § 152(3).

Finally, James asserts that "the Government did not prove that the statement was fraudulent." Defendant-Appellant Br. at 19. Toward this end, James argues that "the evidence tended to suggest that the filing was never intended to be a 'new' bankruptcy, but was instead an imprecise attempt to respond to a filing in the [2007 bankruptcy]." *Id.* James also makes the point that "'N/A'" is not the same as 'none' . . . rather, it indicates that the prior bankruptcies were irrelevant to the instant filing." *Id.* at 19-20. Even assuming both these arguments are true, neither is availing. Indeed,

No. 11-3711
*United States v. Caesarea James, Jr.*

James's points ultimately lend further credence to the conclusion that a rational juror could find adequate evidence to convict James of violating § 152(3).

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**