**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melvin HAYSLETT, Defendant–
Appellant.**

No. 00–5086.

United States Court of Appeals,
Sixth Circuit.

April 18, 2001.

Before KEITH, SILER, and CLAY,
Circuit Judges.

PER CURIAM.

Defendant Melvin Hayslett pleaded guilty to the charge of interstate transportation of stolen goods, 18 U.S.C. §§ 2314 and 2. Applying an estimated loss valuation of $2,055,560.40, the district court sentenced Hayslett to 24 months' imprisonment. Hayslett appeals his sentence on the ground that the fourteen-level enhancement assigned to him under USSG § 2B1.1 was in error. We affirm.

## I.  BACKGROUND

Hayslett worked in the Memphis, Tennessee warehouse of Schering Plough Healthcare Products, Inc. ("Schering") for nearly twenty years. In that capacity, he knew John Webb, who worked in Schering's maintenance utility department. Webb approached Hayslett about participating in a scheme to steal various drug products from Schering's warehouse, and Hayslett admits that he began stealing those products around January or February 1998. He stole pallets of merchandise from the warehouse and loaded them into Webb's van. Webb would then sell the stolen merchandise to Freddie Hampton.

In January 1999, Memphis police arrested Jamie Arnold on charges unrelated to this case. Later, Arnold told the police that he had been purchasing stolen Schering merchandise for over a year. He explained that he purchased his stolen Schering merchandise from Hampton, who received it from two Schering employees. In March 1999, police witnessed the theft and sale of Schering products. First, they observed Webb delivering stolen Schering

products to Hampton. Then, they observed Hampton driving a van filled with those products across the state line into Mississippi. Once over the state line, Hampton was arrested. He confessed, naming Hayslett and Webb as the Schering insiders who stole his merchandise. Webb also confessed and implicated Hayslett.

The van contained 1,381 cases of stolen Schering products, with a wholesale value of $414,300.00. Additionally, using records kept by Arnold that detailed what he bought and sold, police were able to create a list of stolen Schering products that had been bought and resold by Arnold. These records showed that he made his first sale of stolen Schering products on January 20, 1998, around the same time that Hayslett began stealing Schering products. Schering's manager of inventory finance calculated that the wholesale value of the stolen Schering merchandise reaching Arnold from January 20, 1998 until, but not including, the merchandise was seized from the van, totaled $1,641,260.40. When added to the value of the merchandise recovered from the van, $414,300.00, total loss equaled $2,055,560.40.

## II. STANDARD OF REVIEW

A district court's factual findings concerning the application of the sentencing guidelines, including the amount of loss for which a defendant is to be held accountable pursuant to USSG §§ 2B1.1 and 1B1.3, are subject to a deferential "clearly erroneous" standard of review, while its legal conclusions concerning the guidelines are reviewed de novo. *See United States v. Latouf,* 132 F.3d 320, 331 (6th Cir.1997).

## III. DISCUSSION

Contending that the district court erred by allocating the total loss flowing from the Schering scheme, $2,055,560.40, to him, Hayslett challenges the fourteen-level enhancement assigned under § 2B1.1. Specif-

ically, he argues that it was impossible for the district court to allocate loss from the Schering merchandise stolen prior to the March 1999 van seizure to him because the conspiracy involved two other defendants, Webb and Hampton. He argues that they were involved in the sale of Schering products before him, that they could have stolen those products without him, and that any amount of loss allocated to him based on Schering goods stolen before the March seizure would be "speculative and unreliable." According to Hayslett, the district court "could not make a reasonable estimate of the loss" under USSG § 2B1.1 because, under USSG § 1B1.3, the court was not able to determine what component of the $2,055,560.40 loss derived from relevant conduct attributable to him.

USSG § 2B1.1 guides the district court in assessing a "total offense level" in crimes of theft. The "base offense level" for a crime of theft such as the interstate transportation of stolen goods is four. But the "base offense level" is increased according to "specific offense characteristics" such as "loss" or value of the property stolen. Application Note 3 explains that the district court's determination of loss need not be precise:

> For the purposes of section (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based upon the approximate number of victims and the average loss to each victim, or on more general factors such as the scope and duration of the offense.

USSG § 2B1.1, comment. (n.2).

USSG § 1B1.3(a)(1)(B) states that in a jointly undertaken criminal activity, specific offense characteristics, such as the amount of loss in § 2B1.1, is allocated according to "all reasonably foreseeable

acts and omissions of others in furtherance of the jointly undertaken criminal activity." Application Note 2 explains that "a defendant is accountable for the conduct ... of others ... that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant." USSG § 1B1.3, comment. (n.2). The relevant conduct for which a defendant is held accountable must be based on reliable information supported by a preponderance of the evidence. *See United States v. Brawner,* 173 F.3d 966, 971 (6th Cir.1999).

The district court did not err in assessing the total amount of loss flowing from the theft of Schering merchandise against Hayslett. Hayslett pleaded guilty under 18 U.S.C. §§ 2314 and 2, meaning that he did not challenge his role in the scheme that transported stolen goods interstate. He admits that he began stealing Schering products in January or February 1998. Also, after his arrest in January 1999, Arnold told police that he had been purchasing stolen Schering merchandise from Hampton and two Schering insiders for over a year. Hayslett neither attacks the records kept by Arnold nor the valuation of the stolen Schering products contained in those records. Instead, he merely argues that, from the records, it is impossible to tell the exact identity of the individual who physically removed the products from Schering's warehouse. He contends that his relevant conduct for the purpose of loss allocation under § 2B1.1 should be limited to the value of the Schering products discovered in the van in March 1999.

The record does not support Hayslett's position. He was the only individual connected with the scheme who could have removed the goods from Schering's warehouse that were resold to Arnold. Before his involvement in the scheme, the only Schering products that Webb, the only other co-conspirator who worked for Schering, sold to Hampton were insoles and foot powder that he would *buy* from the company at a low price and resell to Hampton. The Schering merchandise comprising the $2,055,560.40 loss in question did not even include foot products. Webb did not have access to the warehouse to remove the pallets of goods in question. Hayslett was the only conspirator who could remove pallets of merchandise from the warehouse without arousing suspicion.

Finding a nexus between Arnold's extensive records and Hayslett's relevant conduct, the district court concluded that Arnold's records are a reliable indicator of the goods stolen by Hayslett. Thus, Hayslett was held accountable for the total value of the Schering products stolen from January 1998 through the March 1999 seizure. Hayslett presents no evidence to contradict the district court's findings. According the district court the deference that it is due, we hold that the fourteen-level enhancement allocated to Hayslett for "loss" under § 2B1.1 was proper.

AFFIRMED.