**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Yennier Capote GONZALEZ,
Defendant–Appellant.**

No. 14–5889.

United States Court of Appeals,
Sixth Circuit.

March 16, 2016.

Before: KEITH, COOK, and McKEAGUE, Circuit Judges.

DAMON J. KEITH, Circuit Judge.

After a jury trial, Defendant Yennier Capote Gonzalez ("Gonzalez") was convicted for five counts of healthcare fraud in violation of 18 U.S.C. § 1347; one count of money laundering in violation of 18 U.S.C. § 1957; and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. On appeal, we reversed his conviction of aggravated identity theft on sufficiency-of-the-evidence grounds and remanded the case for resentencing. He was then resentenced to fifty-two months of imprisonment. He now appeals that sentence, arguing that the district court erred in applying a two-level enhancement for obstruction of justice under § 3C1.1 [1] and a two-level enhancement for an offense involving the unauthorized use or transfer of a means of identification under

---

1. U.S. Sentencing Guidelines Manual § 3C1.1 (2013).

§ 2B1.1.[2] For the reasons below, we AFFIRM Gonzalez's sentence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The underlying facts

The facts related to this appeal are as follows:[3] In June 2010, Gonzalez formed a company called Gainesboro Ultimate Med Service ("Gainesboro Med"). *Gonzalez,* 560 Fed.Appx. at 556. In the corporate charter for Gainesboro Med, Gonzalez listed himself as the president. *Id.* He applied for a business license from Jackson County, Tennessee to operate Gainesboro Med as an "online medical billing" company. *Id.*

On July 13, 2010, an individual named Manuel Trujillo sent a text message to a cell phone number listed with the Gainesboro Med checking account. *Id.* Gonzalez had opened the checking account and was the sole authorized signatory. *Id.* The text message included the name of "Tidence Prince, M.D." and an NPI[4] number. *Id.* Two days after that, Trujillo sent several text messages to that cell phone number with the following names: Orlando Martinez, Jorge Valdez, Monica Rodriguez, and Rosemary Mir. *Id.*

Over the next few weeks, Gainesboro Med submitted online claims to two insurance companies, Wellpoint and Cigna, seeking reimbursement for injections that were purportedly administered to the individuals listed in Trujillo's text messages *Id.* Each claim listed Dr. Prince's NPI number and listed Dr. Prince as the physician who administered these injections. *Id.*

On August 12, 2010, Cigna mailed a check payable in the amount of $38,116 to Gainesboro Med for medical services purportedly provided to Rosemary Mir and Monica Rodriguez. *Id.* at 557. This check was deposited into the Gainesboro Med account. *Id.* Gonzalez then wrote a check to Mr. Trujillo for $2,000 and another check in the same amount to himself. *Id.* On August 23, 2010, Gonzalez obtained a $14,400 cashier's check, payable to his landlord, which was drawn from the Cigna funds in the Gainesboro Med account. *Id.* at 556–57.

A special agent at the Department of Health and Human Services investigated Gonzalez's activity. *Id.* Gonzalez was eventually arrested and, after a jury trial, was convicted for five counts of healthcare fraud in violation of 18 U.S.C. § 1347; one count of money laundering in violation of 18 U.S.C. § 1957; and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. The district court denied Gonzalez's motion for judgment of acquittal or new trial, and sentenced him to sixty-seven months of imprisonment. Gonzalez appealed his conviction and sentence.

### B. Gonzalez's first appeal

Gonzalez challenged, among other things, the sufficiency of the evidence for each of his convictions. *Id.* at 559. On March 28, 2014, we affirmed all of his convictions except his conviction for aggravated identity theft. For that conviction to be proper, the government was "required to prove that [Gonzalez] knew that

---

**2.** U.S. Sentencing Guidelines Manual § 2B1.1 (2013).

**3.** We previously discussed the underlying facts of this case at length in *United States v. Gonzalez,* 560 Fed.Appx. 554 (6th Cir.2014),

and so provide an abbreviated background here.

**4.** The NPI is a "number identifying medical providers which is unique to each provider." Appellant Br. 6.

the means of identification at issue belonged to another person." *Id.* at 560 (citation and quotation marks omitted). "[T]he means of identification at issue was Dr. Prince's NPI number." *Id.* "[F]or Gonzalez's conviction to stand, the government must have proved that Gonzalez knew that [Dr.] Prince was a real person." *Id.* We found that the government failed to present sufficient evidence that would allow a jury to infer, beyond reasonable doubt, that Gonzalez knew that Dr. Prince was a real person. *Id.* at 561. Because we reversed the conviction for aggravated identity theft, we did not address any sentence-related arguments. *Id.* We thus remanded the case for resentencing. *Id.*

### C. Resentencing on remand

#### i. Revised presentence report ("PSR").

The PSR was prepared on July 1, 2014. R. 183 at 1448. The district court adopted the PSR without change. R. 181 at 1422. According to the PSR, Gonzalez's offense level was 23. R. 183 at 1468. This offense level included various sentencing enhancements, two of which are relevant to this appeal: (1) an enhancement under § 3C1.1 for obstruction of justice; and (2) an enhancement under § 2B1.1 for an offense involving the unauthorized use or transfer of a means of identification.

*§ 3C1.1 Enhancement.* To begin, the PSR identified three bases for imposition of the enhancement under § 3C1.1: (i) Application Note 4(b) (committing, suborning, or attempting to suborn perjury); (ii) Application Note 4(c) (producing a false document or record during an official investigation or judicial proceeding); and (iii), Application Note 4(f) (providing materially false information to a judge or magistrate judge). R. 183 at 1458, ¶ 27.

5. *See* R. 8 at 23. This document is written in Spanish.

The following facts are also relevant to the § 3C1.1 enhancement:

The defendant submitted a sworn financial statement[5] dated September 22, 2010, prior to being placed on pretrial release supervision on September 24, 2010. The financial statement asked whether, in the preceding 12 months, he received any income from a business, profession, or other form of self-employment, or from rent payments, interest, dividends, retirement or other sources. In response to this question, the defendant checked the box next to "No." At trial, however, the defendant stated under oath that on June 30, 2010, he received $5000 from Manuel Trujillo in accordance with a contract titled "Web Development Agreement."

The Government advised that the defendant's sworn statement at trial was material because it was an integral part of the defense theory that he was not guilty of the charges against him. The sworn statement in the financial affidavit, relating to the same period (the 12–month period preceding September 22, 2010), addressed the same subject matter, namely, the defendant's receipt of income. Since the two statements cannot both be true, a two-level enhancement is applied.

*Id.* at 1458. According to the Second Addendum to the Presentence Report, Gonzalez objected to this calculation on three grounds: First, he objected to the wording of the following sentence: "The Government advised that the defendant's sworn statement at trial was material because it was an integral part of the defense theory that he was not guilty of the charges against him." R. 183 at 1474. Second, he contended that the statements were not "inconsistent since the financial affidavit addressed ... Gonzalez personally, not

monies received on behalf of his corporate entity." *Id.* Third, any misstatement was "immaterial." *Id.*

*§ 2B1.1 Enhancement.* As for the enhancement under § 2B1.1, the PSR noted three possible ways of applying the enhancement:

(1) Dr. Prince's NPI constitutes an "unauthorized access device" in that it is a personal identification number that can be used to obtain health insurance reimbursement payments. The use of Dr. Prince's NPI was unauthorized because it was used without his permission ... The defendant testified that another individual, Manuel Trujillo, transferred the NPI to the defendant in connection with the offense of conviction, thus trafficking the NPI.

    Gainesboro Med used the "means of identification" of the MAP beneficiaries,[6] including their names, social security numbers, and dates of birth to create various membership applications[7] and

claims for payment, which would qualify as other means of identification.

(3) Dr. Prince's name and unique [NPI] qualifies as means of identification which was used to was [sic] produce fraudulent claims and receive reimbursement checks, which are other means of identification.

*Id.* at 1459–60.[8]

### ii. Sentencing Hearing.

*The district court's ruling as to enhancement under § 3C1.1.* At the sentencing hearing, defense counsel asked the court if it wished to address the "$5,000"—presumably referring to the obstruction-of-justice enhancement—to which the court responded that it simply would ask the government about its "views on this idea that there was a corporation." R. 182 at 1431. The government expressed that the defense's argument that the corporation received the income rather than Gonzalez was "a bit of a red herring." *Id.* at 1434. The government stated that whether the income Gonzalez received was "personal

---

**6.** Although the PSR defines MAP ("Medicare Advantage Program"), *see* R. 183 at 1455, it does not define "MAP beneficiaries." It presumably refers to the individuals on whose behalf Gainesboro Med sought reimbursement for allegedly performed medical services: Orlando Martinez, Jorge Valdez, Monica Rodriguez, and Rosemary Mir.

**7.** The "membership applications" refer to applications submitted on behalf of the beneficiaries to the insurance companies. R. 158 at 1037–42 (describing that "either a member or agency can apply for membership through an insurance or through [Centers for Medicare and Medicaid Services]" and that "they [are] applying to be insured...").

**8.** Given the use of various statutory terms in these paragraphs, we provide, in relevant part, the following definitions:

"The terms 'access device' means any card, plate, code, account number, electronic serial

number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, *to obtain money, goods, services, or any other thing of value,* or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." 18 U.S.C. § 1029(e)(1) (emphasis added). "The term 'unauthorized access device' means any *access device* that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3) (emphasis added).

"The term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—(A) name, social security number, date of birth ... or (D) ... access device." 18 U.S.C. § 1028(d)(7).

income or corporate income, he was employed by a corporation, receiving cash one way or another." R. 182 at 1435. Defense counsel did not otherwise discuss the enhancement. The court ruled as follows on the enhancement:

> As to ... the obstruction of justice, the statements that he was—false statements that he was not working at the time of his application for appointment of counsel was a material statement. And, therefore, that objection was overruled.

*Id.* at 1439.

*The district court's ruling as to enhancement under § 2B1.1.* The court asked defense counsel the following question:

> [I]f we leave out the $5,000 matter, if we leave out the doctor's PIN number or identification, you still have the issue of the usage of the recipients, or purported recipient[s] [sic] of the medical services, don't you?

*Id.* at 1429. Defense counsel responded:

> [T]here was absolutely no proof introduced at trial that the usage was unlawful or without their permission or anything. It was just introduction of records that are [sic] showed nothing except for a name and social security number.... There was no usage at all regarding the usage of those identification and social security numbers.

*Id.*

In line with the PSR's recommendation, the government identified three different ways of applying the enhancement. R. 182 at 1431–33. The court expressed reluctance about imposing an enhancement based upon the "doctor's ID number that was part of the [Sixth Circuit's] reversal." *Id.* at 1433. The court further stated that "if I don't have to decide that, I would prefer not to decide that. Let's decide the one

that I think is the clearest. And if that is determined to be a legitimate enhancement, it renders moot the objections to the others." *Id.*

In response, the government argued that the "Sixth Circuit concluded that there wasn't evidence that a jury could use to infer beyond a reasonable doubt that the defendant knew that Dr. Prince was a real person. I don't think that standard comes into play at all when we're talking about 2B1.1(b)(11) enhancement." *Id.* at 1433–34.

The government further agreed with the court's comment that: "if ... there were payments generated as a result of a submission ... the inference was that that person existed in the system as someone who would be entitled to a payment." *Id.* at 1434.

After the court further discussed the issue of the beneficiaries' authorization, the court ruled on the enhancement as follows:

> [T]he Court's recollection of the proof leads the Court to believe that whatever may have been provided to the defendant, that the proof was, was that these names were submitted for medical services that were not provided, and the names of the beneficiaries—purported beneficiaries and of Dr. Prince were used to accomplish that.

R. 182 at 1439–40. The court thus overruled Gonzalez's objection. *Id.*

*Sentence calculation.* The court then concluded that the offense level was 23, and that the guideline range was 46–57 months under United States Sentencing Guidelines. R. 182 at 1440. The court then invited both parties to discuss "what constitutes a reasonable" sentence on ap-

plying the " § 3553(a)" [9] factors. *Id.* Defense counsel referred the court to the medical records of Gonzalez's mother, who "might" be suffering a terminal illness, in addition to Gonzalez's "work records and potential for employment." *Id.* Defense counsel then referred the court to its "position paper." *Id.* The court discussed with the government how Gonzalez's "impressive attempts" to educate himself and acquire employment-related skills weigh in on the § 3553(a) "consideration." *Id.* at 1441. The government argued that Gonzalez's "impressive attempts" should be considered as "mitigating circumstances" that are "balanced out" by the other factors, such as the nature and seriousness of the offense. *Id.*

After hearing these arguments, the court imposed a sentence of fifty-two months of imprisonment; placed Gonzalez on supervised release for three years; declined to impose a fine; ruled that the restitution amount was $19,454.10; and imposed a special assessment of $600. *Id.* at 1440–44. ' Judgment was entered on July 17, 2014. R. 180.

### D. This appeal.

Gonzalez appealed his sentence on July 14, 2014.[10] R. 179. In his brief, he argues that the enhancements under § 2B1.1 and § 3C1.1 were improper, and that the sentence was both procedurally and substantively unreasonable.

## II. STANDARD OF REVIEW

The standard of review for each of the sentence enhancements is as follows:

9. *See* 18 U.S.C. § 3553(a).

10. That Gonzalez appealed his sentence after the entry of judgment is of no consequence. *See United States v. Baker,* No. 06–6610, 2009 WL 751197, at *1 n. 2 (6th Cir. March 23, 2009) ("Although defendant filed his notice of appeal after he was sentenced, but before the

### A. § 3C1.1:

We have analyzed an enhancement for obstruction of justice under § 3C1.1 under both de novo and clear error review. *See United States v. Richmond–Hairston,* 509 Fed.Appx. 523, 524 (6th Cir.2013) (citing *United States v. Cole,* 359 F.3d 420, 430–31 (6th Cir.2004)); *see also United States v. Gauna,* 485 Fed.Appx. 70, 77 (6th Cir. 2012). Under either standard, the result is the same in this case.

### B. § 2B1.1:

As for an enhancement under § 2B1.1, "[a] district court's factual findings concerning the application of the sentencing guidelines ... are subject to a deferential 'clearly erroneous' standard of review, while its legal conclusions concerning the guidelines are reviewed de novo." *United States v. Hayslett,* 11 Fed.Appx. 460, 461 (6th Cir.2001); *see also United States v. Williams,* 355 F.3d 893, 898 (6th Cir.2003) ("[T]his court has held that our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous.").

## III. DISCUSSION

### A. Obstruction–of–Justice Enhancement under § 3C1.1

A two-level obstruction-of-justice enhancement may be appropriate:

district court entered judgment, we still possess appellate jurisdiction."); *accord* Fed. R.App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.")

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense. . . .

U.S. Sentencing Guidelines Manual ("USSG") § 3C1.1 (U.S. Sentencing Comm'n 2013).[11] "Application Note 4 provides examples of conduct that trigger this enhancement, including 'producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding.'" *United States v. James*, 496 Fed. Appx. 541, 549 (6th Cir.2012) (citing USSG § 3C1.1, app. note 4(c)) (emphasis omitted). Another example is "providing materially false information to a judge or magistrate." USSG § 3C1.1 cmt. 4(f). Materially false information is information "that, if believed, would tend to influence or affect the issue under determination." § 3C1.1 cmt. 6.

The government argues that Gonzalez's financial affidavit was "false" because it reported that he had "no income and no employment." Appellee Br. 18. According to the government, this affidavit contradicted Gonzalez's testimony at trial,

where Gonzalez testified that he received cash "for his own personal benefit." *Id.* This was material, the government contends, because the magistrate judge appointed counsel to represent him. *Id.* at 20. Gonzalez acknowledges that he received $5,000 from Mr. Trujillo, but he asserts that payment was for services performed between Mr. Trujillo, J & N Investments, and Gonzalez's own corporation, Gainesboro Med. Appellant Br. 14. In challenging the enhancement, Gonzalez also argues that any misstatement is immaterial to the magistrate judge's decision to appoint counsel. *Id.*

■ The district court did not err in applying the obstruction of adjustment enhancement. To begin, Gonzalez does not dispute that he said he received the $5,000, Appellant Br. 13—if he did dispute this statement, then his trial testimony to the contrary exposes him to perjury charges. The affidavit specifically asked whether Gonzalez received "any income from a business, profession, or other form of self employment [sic] ... or other sources." R. 183 at 1458.[12] Accordingly, Gonzalez's statement on the affidavit that he did not receive the $5000 must be false. Further, Gonzalez produced the false document or affidavit after the indictment issued, and thus during a "judicial proceeding." USSG § 3C1.1, app. note 4(C); *see James*,

11. The PSR applied the 2013 edition of the Guidelines. R. 183 at 1458.

12. We acknowledge that the affidavit at issue was in Spanish. R. 8 at 23. We assume that the PSR's description or translation of the questions and Gonzalez's responses is accurate, R. 183 at 1458, ¶ 28, because Gonzalez did not clearly contest this description before the district court, and he failed to "produce any evidence that called the reliability or correctness" of the document into question. *See United States v. Lang*, 333 F.3d 678, 681 (6th Cir.2003) (citation omitted). For that reason, the district court was entitled to rely on this

description in the PSR. *See United States v. Geerken*, 506 F.3d 461, 467 (6th Cir.2007) ("When a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant."); *see also United States v. Hunter*, 558 F.3d 495, 506 (6th Cir.2009) ("Because [the defendant] has not offered evidence to contradict either the testimony at trial or the estimate [related to drug quantities] [in] the presentence report, the district court was entitled to rely on those estimates in making its ruling.").

496 Fed.Appx. at 549 ("[B]ecause [the defendant] admits to filing false documents ... *after* the indictment issued, his conduct falls squarely within the 'judicial proceeding' aspect of the Application Note."); *see generally United States v. Gilpatrick,* 548 F.3d 479, 485 (6th Cir.2008); *United States v. Fredell,* 79 Fed.Appx. 799, 808 (6th Cir.2003).

Gonzalez argues that "application of the obstruction of justice enhancement based on his [f]inancial [a]ffidavit is inappropriate because the allegedly false financial information was not material." Appellant Br. 14. Gonzalez's argument focuses solely on one way of applying the enhancement—a material false statement to a judge or magistrate judge under Application Note (f). He ignores that the enhancement also applies for producing a false document during a judicial proceeding under Application Note 4(c). While Application Note 4(f) has a materiality requirement, Application Note 4(c) does not. *Compare* USSG § 3C1.1, app. note 4(c) *with* USSG § 3C1.1, app. note 4(f). Where the term "material" is included in one Application Note but not another, we presume that the "disparate inclusion or exclusion" was "intentional[ ]" and "purpose[ful]." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); *see United States v. Jackson,* 635 F.3d 205, 206 (6th Cir.2011) ("In interpreting the Sentencing Guidelines, the traditional canons of statutory interpretation apply."); *see also Gilpatrick,* 548 F.3d at 485 (comparing the absence of the term "material" in Application Note 4(c) with the use of the term in another Application Note).[13]

In sum, the district court's imposition of a two-level enhancement for obstruction of justice was not improper or clearly erroneous.

### B. Enhancement under § 2B1.1(b)(11)

The government argued, among other things, that Gainesboro Med's use of the means of identification to submit fraudulent health claims and membership applications supported the enhancement.

Section 2B1.1(b)(11) provides in relevant part:

(11) If the offense involved ... (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification ... increase by 2 levels.

USSG § 2B1.1(b)(11). Before proceeding with the analysis, we provide certain definitions. First, " 'means of identification' has the meaning given that term in 18 U.S.C. 1028(d)(7), except that such means of identification shall be of an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct)." USSG § 2B1.1, app. n.1. And under 18 U.S.C. § 1028(d)(7), "means of identification" refers to a "name or number that may be used ... to identify a specific individual."

Under subsection (C)(i), this enhancement is appropriate where a person uses one means of identification to generate another. *See* USSG § 2B1.1 cmt. background ("This subsection focuses principally on an aggravated form of identity theft

---

13. Whether or not the district court relied exclusively on Application Note 4(f) in imposing an enhancement is of no consequence. *See United States v. Davist,* 481 F.3d 425, 427 (6th Cir.2007) (affirming the district court's application of a § 3C1.1 enhancement on a rationale not relied on by the district court).

known as 'affirmative identity theft' or 'breeding,' in which a defendant uses another individual's name, social security number, or some other form of identification (the 'means of identification') to 'breed' ((i.e., produce or obtain) new or additional forms of identification.")). The Guidelines provide examples of conduct to which subsection (C)(i) applies. In one example, the enhancement is warranted when "[a] defendant obtains an individual's name and social security number from a source ... and obtains a bank loan in that individual's name." *Id.* In this example, the account number of the bank loan is the "other means of identification that has been obtained unlawfully." *Id.* In another example, the enhancement is warranted when a defendant obtains an individual's personal information and "applies for, obtains, and subsequently uses a credit card in that individual's name." *Id.* In this instance, the credit card is the "other means of identification that has been obtained unlawfully." *Id.*

■ Here, the § 2B1.1(b)(11)(C)(i) enhancement was proper. The names of the beneficiaries were used to produce fraudulent health claims to obtain money. The names of the beneficiaries were the first means of identification. *See* 18 U.S.C. § 1028(d)(7) (stating that a "means of identification" refers to a "name ... that may be used ... to identify a specific individual."). The fraudulent health claims, which bear unique numbers, were the second, or "other," means of identification. *See* Appellee Br. 25 n.2 (listing trial exhibits that show that WellPoint claims bear a "Document Control Number," or "DCN," and Cigna claims bear a "Claim Number."); *see also* 18 U.S.C. § 1028(d)(7) (stating that a "means of identification" refers to a "number ... that may be used ... to identify a specific individual."). Our case law supports this analysis. *See, e.g., Unit-*

*ed States v. Williams,* 355 F.3d at 899 ("As a bank loan number is an account number that can be used to obtain money ... it is a 'means of identification' "); *see also United States v. Hamad,* 300 Fed.Appx. 401, 404 (6th Cir.2008) (reasoning that the mortgage loans fraudulently obtained were "associated with account numbers, and were used ... to obtain money, bringing them within the definition of 'means of identification.' "). And, as Gonzalez concedes, Appellant Br. 27, the membership applications also qualified as a second "means of identification." R. 158 at 1039–42 (revealing that certain applications bore the names and birth dates of beneficiaries).

Gonzalez argues that, because no beneficiary ever testified at trial, there is no proof that the use of the Medicare beneficiaries' means of identification was unauthorized. Appellant Br. 22. Thus, according to Gonzalez, the government has not shown that the use or transfer of a means of identification was "unauthorized" or "without their permission." *Id.; see* R. 182 at 1429. This argument misses the mark. First, it is true that no beneficiary testified. But the beneficiaries, as the government points out, could not have authorized submission of claims when they had no legal authority to do so. *See* Appellee Br. 29–30; *United States v. Mobley,* 618 F.3d 539, 547–48 (6th Cir.2010) ("That a defendant's use of any social security number—including his own—to submit fraudulent credit applications must be 'without lawful authority' is obvious.") (emphasis omitted). For that reason, even if, under Gonzalez's best-case scenario, the beneficiaries testified that they consented to or permitted submission of claims, it would be of no consequence. Indeed, in *United States v. Lumbard,* 706 F.3d 716, 725 (6th Cir.2013), we held that the phrase "without lawful authority" is "not limited to instances of theft, but includes cases where the defendant obtained the permis-

sion of the person whose information the defendant misused." Thus, Gonzalez's argument lacks merit, and a two-level enhancement under § 2B1.1(b)(11)(C)(i) is proper.

### C. Procedural and Substantive Reasonableness of Sentence.

A criminal sentence "must be both procedurally and substantively reasonable." *United States v. Brooks,* 628 F.3d 791, 795 (6th Cir.2011) (citing *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Ordinarily, challenges to the reasonableness of a sentence are reviewed for abuse of discretion. *United States v. Kamper,* 748 F.3d 728, 739 (6th Cir.2014).

But plain-error review applies to a review of the procedural reasonableness of a sentence if the district court asks the so-called *Bostic* question and the defendant does not raise an objection to the procedural reasonableness of the sentence at that time. *See Brooks,* 628 F.3d at 796 (citing *United States v. Bostic,* 371 F.3d 865, 872–73 (6th Cir.2004)). *Bostic* requires that the district court ask "the parties whether they have any objections to the sentence just pronounced that have not previously been raised." [14] *Bostic,* 371 F.3d at 873 (citation omitted). Under the plain-error standard,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously

affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus,* 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010).

The district court complied with *Bostic* when it asked the following: "Any procedural or substantive objection to the sentence imposed by the Court?" R. 182 at 1445. The government responded that it had no objections. *Id.* Although defense counsel responded "nothing further," he asked the court to recommend that Gonzalez not be deported upon completion of his sentence. *Id.* The court stated, among other things, that it did not know whether it had jurisdiction to address that issue. *Id.* Given defense counsel's response, the plain-error standard of review applies to the extent that Gonzalez raises new arguments as to the procedural reasonableness of the sentence, which we turn to next.

#### i. Procedural reasonableness.

Gonzalez argues that his sentence was procedurally unreasonable because (1) the district court incorrectly imposed the sentence enhancements under § 3C1.1 and § 2B1.1; and (2) the district court incorrectly applied the enhancements and "failed to adequately explain" the reasoning. Appellant Br. 25.

As to (1), we have already addressed Gonzalez's arguments with respect to the sentence enhancements and so we do not discuss them here. As to (2), Gonzalez "did not challenge the adequacy of the explanation before the district court at any time during the sentencing hearing, even after the court asked if he had any objections." *United States v. Sorrell,* 365 Fed. Appx. 672, 674 (6th Cir.2010) (citing *Unit-*

---

**14.** The plain-error limitation of the *Bostic* question does not apply to the substantive reasonableness of a sentence absent an excep-

tion not applicable here. *See Brooks,* 628 F.3d at 796.

*ed States v. Vonner*, 516 F.3d 382, 386 (6th Cir.2008) (en banc)). Accordingly, "we review this challenge for plain error." *Id.*

Here, Gonzalez asserts in conclusory fashion, without any developed argument, that the district court "failed to adequate explain [his] sentence." Appellant Br. 25. This argument is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (alteration in original) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995)). Even if we did consider Gonzalez's argument, it lacks merit. District courts are not required to "give the reasons for rejecting any and all arguments by the parties for alternative sentences." *Vonner*, 516 F.3d at 387. Additionally, "[a] district court is not required to provide as much specificity of a within-Guidelines sentence—such as this one—compared to an outside-Guidelines sentence." *Sorrell*, 365 Fed.Appx. at 674. The district court also ruled on the two objections at issue here, and gave an explanation of its ruling. *See United States v. Edwards*, 525 Fed.Appx. 315, 317 (6th Cir.2013) (stating that "[t]he district court did not commit plain procedural error . . . [where it] explicitly overruled [the defendant's] objection to the amount of cocaine attributed to the conspiracy in the presentence report"); *see also United States v. Jackson*, 627 Fed.Appx. 460, 464–65 (6th Cir.2015) (noting that district court adequately explained its overruling of ob-

jections to two-level guideline enhancements).

#### ii. Substantive reasonableness.

Gonzalez argues that the district court "did not consider the relevant factors" and that it "failed to explain any reason other than the seriousness of the offense and [Gonzalez's] efforts at rehabilitation." Appellant Br. 26. As a preliminary matter, the *Bostic* limitation does not apply here and we therefore review for abuse of discretion. *See Brooks*, 628 F.3d at 796.[15]

■ We conclude that the district court did not abuse its discretion here. Although the district court did not tick through all of the § 3553(a) factors, it indicated that it "considered all the factors under § 3553(a)" and that it would impose a sentence that "reflects" those factors. R. 182 at 1443. Moreover, it specifically referred to the seriousness of the offense, which is a § 3553(a) factor,[16] and expressed its attempt to impose a sentence that takes into account Gonzalez's "post-rehabilitation efforts," which is encompassed by another § 3553(a) factor.[17] *Id.* at 1445. Given the presumption that is afforded to a within-guidelines sentence, *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir.2007), the district court did not abuse its discretion.

We have reached the same conclusion when faced with similar facts. In *United States v. Brissett*, 375 Fed.Appx. 473, 477 (6th Cir.2010), for example, the sentencing court "announced that it was 'required to

---

**15.** Notably, we have characterized a failure to consider the relevant § 3553(a) factors as relating to *both* procedural and substantive reasonableness in large part because of the "overlap between procedural and substantive considerations." *United States v. Simpson*, 346 Fed.Appx. 10, 13 (6th Cir.2009). Because of this overlap, we have determined that the plain-error standard "should not be

applied where challenges to substantive reasonableness could also be considered a procedural reasonableness claim." *United States v. Jeter*, 721 F.3d 746, 756 (6th Cir.2013).

**16.** *See* 18 U.S.C. § 3553(a)(2)(A).

**17.** *See* 18 U.S.C. § 3553(a)(1).

consider the applicable factors enumerated in section 3553(a)' and specifically confirmed that it had done so." Although it did not "explicitly mention every one of the § 3553(a) factors, [the Sixth Circuit] [has] never required the ritual incantation of the factors to affirm a sentence." *Id.* (quoting *United States v. Smith,* 505 F.3d 463, 467 (6th Cir.2007)). "Instead, district courts need only articulate their reasoning in a manner sufficient to allow for meaningful reasonableness review by appellate courts." *Id.* (quoting *United States v. Pearson,* 212 Fed.Appx. 504, 507 (6th Cir. 2007)); *see also United States v. Simmons,* 501 F.3d 620, 625 (6th Cir.2007) (concluding that sentence was reasonable even though district court did not discuss a particular § 3553(a) factor); *United States v. Williams,* 436 F.3d 706, 708 (6th Cir. 2006).

Gonzalez has not told us which factor the district court purportedly failed to consider. A district judge must "make explicit its consideration of the § 3553 factors only when a defendant makes a particular argument and when a factor is particularly relevant." *United States v. Kliebert,* 508 Fed.Appx. 535, 544 (6th Cir.2012) (citing *Simmons,* 501 F.3d at 625). Given that Gonzalez has failed to make a "particular argument," *see id.,* the district court simply did not abuse its discretion.

All in all, the district court's sentence was not substantively unreasonable.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** Gonzalez's sentence.