# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20409

United States Court of Appeals
Fifth Circuit

**FILED**
September 26, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

IVAN SUCHOWOLSKI,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, BARKSDALE, and SOUTHWICK, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

After almost a quarter-century's unlawful receipt of social-security benefits in the guise of a person who died in 1990, Ivan Suchowolski pleaded guilty to theft of government property, in violation of 18 U.S.C. § 641, and was sentenced, *inter alia*, to 18 months' imprisonment. At issue is whether, in calculating the offense level for use in computing the advisory Sentencing Guidelines range, the district court erred in applying Guideline § 2B1.1(b)(11)(C)(i): a two-level enhancement for using an unauthorized means of identification to obtain another means of identification. AFFIRMED.

No. 15-20409

I.

In the 1980s, Ruth Stolzenback, a former caregiver to defendant's mother, gave him permission to assist with Stolzenback's financial affairs while she was in a nursing home.  To this end, Suchowolski was authorized to access a joint bank account with Stolzenback to pay her bills.  During this time, Stolzenback received Social Security Administration (SSA) retirement benefits; Suchowolski provided his address on her SSA account to receive paper checks and deposit them in the joint account.

Stolzenback died in 1990.  Suchowolski claims he attempted to notify the SSA of her death; nonetheless, he continued to receive checks from the SSA payable to Stolzenback and deposit them in the joint account for his personal use.

In 2008, the SSA began requiring direct deposit of benefits payments, ending the practice of mailing paper checks.  As a result, and in order to continue receiving the payments, Suchowolski forged Stolzenback's name on a signature card and used her social-security number to open a joint checking account at a credit union under his and Stolzenback's names.  The SSA payments were directly deposited into this account from 2008 to 2011, when the credit union closed.  Therefore, again forging Stolzenback's name on a signature card and using her social-security number, Suchowolski opened a joint checking account at a bank to continue receiving the payments.

Suchowolski continued to receive SSA payments unlawfully until 2014, when they were terminated, following the SSA's investigating Stolzenback's SSA account through a review program for individuals who had not used Medicare benefits for three years.  In doing so, the SSA discovered Stolzenback's death certificate and confronted Suchowolski.  After pleading guilty, he was convicted in 2015.

No. 15-20409

Suchowolski received $220,662 in SSA benefits after Stolzenback's death.  The SSA recovered $34,000 from the bank account, resulting in a loss of $186,662.  The presentence investigation report (PSR) recommended, *inter alia*, the two-level enhancement at issue:  use of an unauthorized means of identification to obtain another means of identification.  As the PSR explained, Suchowolski used Stolzenback's name and social-security number to create additional means of identification, through the credit union and bank accounts. The court applied the two-level enhancement over objections by both Suchowolski and the Government.

## II.

Suchowolski continues to challenge the enhancement.  On the other hand, and despite its objections in district court, the Government urges the enhancement was proper.

Although post-*Booker*, the Guidelines are advisory only, and a properly preserved objection to an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the advisory Guidelines-sentencing range for use in deciding on the sentence to impose.  *Gall v. United States*, 552 U.S. 38, 48–51 (2007).  In that respect, for issues preserved in district court, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error.  *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).  But, issues not raised in district court are reviewed only for plain error.  *E.g.*, *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012).

Resolution of this appeal rests on interpreting Guideline § 2B1.1.  "[T]he plain language of the [G]uideline controls when it (1) is not ambiguous and (2) produces a result that is not absurd".  *United States v. Baker*, 742 F.3d 618, 622 (5th Cir. 2014).  The Guideline at issue imposes the two-level enhancement

No. 15-20409

for "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification".  U.S.S.G. § 2B1.1(b)(11)(C)(i).  In that regard, the commentary provides:

> "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7), except that such means of identification shall be of an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3….

U.S.S.G. § 2B1.1 cmt. n.1.  The language in the commentary is the main focus of the parties' dispute.

A.

For contending the court applied the Guideline improperly, Suchowolski presents five issues:  (1) the 2008 and 2011 accounts were not "unauthorized"; (2) a "means of identification" does not include signature cards or checking accounts; (3) an "actual individual" must be alive; (4) the enhancement was intended only for fraudulently-obtained loans; and (5) the rule of lenity precludes the enhancement.  In response, the Government, *inter alia*, insists he presented only the first and fourth issues in district court, and that, accordingly, plain-error review governs the other three.

It is well-established that our court, not the parties, determines the appropriate standard of review.  *E.g.*, *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc).  As Suchowolski concedes, he did not preserve the rule-of-lenity issue in district court; he did preserve the issues for whether:  the 2008 and 2011 accounts were not "unauthorized"; and the enhancement was intended for different forms of identity theft.  The standard of review for the two remaining issues need not be determined because, assuming *arguendo* they were preserved, his claims still fail.  *See United States v. Kay*, 513 F.3d 432, 452 n.86 (5th Cir. 2007).

4

No. 15-20409

B.

1.

Suchowolski concedes opening the 2008 and 2011 accounts was unlawful, but notes "unauthorized use" is an additional element for the enhancement. According to him, Stolzenback's authorization, prior to her death in 1990, for him to access their joint bank account places his conduct outside the scope of the enhancement.  The Government responds that any authorization given prior to Stolzenback's death could not extend to using her name and social-security number to create joint accounts in 2008 and 2011.  Further, it asserts a person cannot authorize engaging in illegal conduct.

At oral argument here, Suchowolski suggested it was "presumed" he was authorized to use the original joint bank account with Stolzenback, but conceded he could not find — nor can we — anything in the record affirmatively demonstrating that, during her lifetime, she gave him authorization to create a joint bank account with her.  Both common sense and the record make clear Suchowolski created the fraudulent accounts in 2008 and 2011 without Stolzenback's authorization:  for starters, she had been dead nearly 20 years before he opened the first one.

2.

Suchowolski claims his conduct did not fit the language of the Guideline because the signature cards on which he forged Stolzenback's name, as well as the two resulting accounts, are not included in the non-exhaustive list of items in 18 U.S.C. §1028(d)(7) covered by the definition of "means of identification".  The Government responds:   the cards are irrelevant; and the use of

No. 15-20409

Stolzenback's name and social-security number to generate fraudulent account routing numbers was sufficient to qualify under the definition.

As Suchowolski notes, the non-exhaustive list in the statute does not include signature cards or bank accounts. But, it includes names, social-security numbers, and routing codes as "means of identification". *See* §1028(d)(7)(A) and (C). Suchowolski's conduct fell within the ambit of Guideline §§ 2B1.1(b)(11)(C)(i) and 2B1.1 cmt. n.1.

3.

To claim the enhancement does not apply because Stolzenback, after her death, was not covered under the term "actual individual", Suchowolski relies on various dictionary definitions, in order to assert a person must be alive to be an "actual individual" for purposes of the Guideline. The Government counters that the plain meaning of "actual individual" must be understood in the light of the commentary's limitation in the modifying parenthetical immediately following "actual": "i.e., not fictitious".

As the eleventh circuit ruled in *United States v. Philidor*, "[b]ecause 'i.e.' is an abbreviation for 'that is,' the plain meaning of the language used by Congress was that ['not fictitious'] was the exclusive definition for 'actual'". 717 F.3d 883, 886 (11th Cir. 2013). "Accordingly, the plain meaning of the phrase 'actual' does not distinguish between living and deceased persons." *Id*.

4.

In maintaining the enhancement does not apply because it was meant only for when "an individual's identity is used to extend credit or obtain a loan", Suchowolski points to the two examples provided in § 2B1.1 cmt. n.10(C)(ii): obtaining a loan with identification information from stolen mail; and obtaining a credit card with identification information from a stolen driver's license. His actions, according to him, were "more akin to forging a signature

to cash a stolen check . . . [which] is specifically articulated as conduct that does *not* warrant the enhancement". (Emphasis in original.)

As the Government demonstrates, however, our court has affirmed application of the Guideline outside the context of credit fraud, and applied the enhancement under circumstances factually analogous to those at hand. *See United States v. Davis*, 324 F. App'x 395, 395 (5th Cir. 2009) (unpublished); *United States v. Geeslin*, 236 F. App'x 885, 886 (5th Cir. 2007) (unpublished).

5.

Finally, Suchowolski maintains the rule of lenity precludes the enhancement's application. But, as noted, he concedes he did not rely on this rule in district court. As also noted, issues raised for the first time on appeal are reviewed only for plain error. *E.g., Broussard*, 669 F.3d at 546. Under that standard, defendant must show a forfeited plain (clear or obvious) error that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he does so, we have the discretion to correct the error, but should do so only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings". *Id.*

"[T]he rule of lenity only applies if, after considering the text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the [c]ourt must simply guess as to what Congress intended". *United States v. Castleman*, 134 S. Ct. 1405, 1416 (2014). A novel fact pattern alone does not invoke the rule of lenity. *United States v. Shabani*, 513 U.S. 10, 17 (1994). Although other courts interpreting §2B1.1 have found it to be "awkwardly written", *United States v. Hawes*, 523 F.3d 245, 249 (3d Cir. 2008); *United States v. Melendrez*, 389 F.3d 829, 832 (9th Cir. 2004), they have applied the enhancement, *Hawes*, 523 F.3d at 249; *Melendrez*, 389 F.3d at 832. Further, the above discussion demonstrates the enhancement does apply in

No. 15-20409

this factual context.  In any event, Suchowolski has not shown the requisite clear or obvious error.

## III.

For the foregoing reasons, the judgment is AFFIRMED.