**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 18-20399

United States Court of Appeals
Fifth Circuit

**FILED**
August 30, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

ELEKWACHI KALU,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Elekwachi Kalu pleaded guilty, without the benefit of a plea agreement, to conspiracy to commit healthcare fraud. The district court sentenced Kalu at the bottom of the guideline range to 70 months of imprisonment and three years of supervised release. Kalu appeals his sentence, contending that the district court procedurally erred in imposing two sentencing enhancements. We AFFIRM.

I.

Elekwachi Kalu pleaded guilty, without the benefit of a plea agreement, to conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349. In sum, Kalu, his wife, and other coconspirators recruited Medicare beneficiaries, paid doctors to certify them as needing home healthcare, and submitted

No. 18-20399

fraudulent Medicare claims for those beneficiaries through Kalu's company, Rhythmic Home Health Care Services, Inc. (Rhythmic).[1] The beneficiaries did not qualify for such services, and in some cases, received cash payments from Kalu for their participation. Between August 2012 and January 2017, Rhythmic billed Medicare approximately $3,191,997.04 for purported home health care services that were either medically unnecessary or that were not performed. Medicare paid Rhythmic approximately $2,878,120.59 on those claims.

As calculated in the presentence report (PSR),[2] Kalu's total offense level of 27 combined with a category I criminal history yielded a guideline range of 70–87 months of imprisonment. Overruling Kalu's objections to the sentencing enhancements, the district court sentenced Kalu at the bottom of the guideline range to 70 months of imprisonment and three years of supervised release. At sentencing, the trial judge explicitly stated that a sentence within the guidelines was appropriate. Additionally, Kalu was ordered to pay restitution to Medicare in the amount of $2,878,120.59. Kalu timely appealed his sentence.

On appeal, Kalu challenges the district court's application of two sentencing enhancements. First, he disputes the two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i), contending that his offense did not involve the use of a means of identification to produce another means of identification. Second, Kalu challenges the increase of his offense level by two under U.S.S.G. § 2B1.1(b)(2)(A)(i) because he argues the offense did not involve 10 or more victims, asserting that Medicare was the only victim of the offense.

---

[1] Kalu had 100% ownership interest in Rhythmic and served as the CEO, CFO, Administrator, Chairman of the Board, and Owner.

[2] The calculations in the PSR were based on the 2016 edition of the United States Sentencing Guidelines Manual (U.S.S.G.).

No. 18-20399

## II.

For issues preserved in district court, we review the district court's application of the Guidelines de novo and its factual findings for clear error. *United States v. Suchowolski*, 838 F.3d 530, 532 (5th Cir. 2016). If erroneous, we must then determine if the procedural error was harmless. *United States v. Halverson*, 897 F.3d 645, 652 (5th Cir. 2018). "[I]ssues not raised in district court are reviewed only for plain error." *Suchowolski*, 838 F.3d at 532.

Kalu filed written objections to both offense-level enhancements in district court. However, Kalu's arguments on appeal with regard to the § 2B1.1(b)(11)(C)(i) enhancement extend beyond the legal basis for his objection in district court, which succinctly stated: "The Medicare number is used in the claim reimbursement process and no other means of identification is thereafter produced." *See United States v. Chikere*, 751 F. App'x 456, 463 (5th Cir. 2018) (citing *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012)). Despite the government's failure to assert plain-error review, "[i]t is well-established that our court, not the parties, determines the appropriate standard of review." *Suchowolski*, 838 F.3d at 532 (citing *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc)). Nevertheless, we need not determine the standard of review because, assuming *arguendo* they were sufficiently preserved, his claims still fail. *See id.*

## III.

Kalu challenges the district court's application of § 2B1.1(b)(11)(C)(i), maintaining that his Medicare fraud did not involve the use of a means of identification to produce another means of identification. Kalu does not dispute that Medicare information is a means of identification. Kalu contends, however, that the enhancement is inapplicable because he used the beneficiaries' Medicare information only to obtain payment for falsely claimed medical services—and he did not intend to produce a Medicare claim number

or to produce or obtain any other means of identification. The fact that the Medicare system administratively creates a claim number as a result of his false billing submissions, he asserts, does not justify the enhancement because a second means of identification was not produced or obtained. Furthermore, Kalu argues that his offense did not involve the type of identification breeding that the Guideline was implemented to punish.

Additionally, Kalu contends that the Medicare claim numbers are not "means of identification" under the Guideline. He argues that the assertion that the claim numbers are "unique is irrelevant," stating that there is no use for the claim numbers outside of the Medicare system, and, again, emphasizing that his only intent in using the beneficiaries' information was to obtain money. Finally, analogizing to the use of a stolen credit card, Kalu contends that Medicare claim numbers are not a "means of identification" because they are only created to track a particular submission.

Resolution of this appeal rests on interpreting Guideline § 2B1.1. "The plain language of the Guideline controls when it (1) is not ambiguous and (2) produces a result that is not absurd." *Suchowolski*, 838 F.3d at 532 (alterations, internal quotation marks, and citation omitted). Section 2B1.1(b)(11)(C)(i) imposes a two-level increase to the defendant's offense level if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." U.S.S.G. § 2B1.1(b)(11)(C)(i). For purposes of this enhancement, the term "means of identification" is broadly defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." *See* U.S.S.G. § 2B1.1, cmt. n.1

No. 18-20399

(cross-referencing the definition in 18 U.S.C. 1028(d)(7)). The statute lists examples of "means of identification" as "including *any*":[3]

    (A)    name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

    (B)    unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

    (C)    unique electronic identification number, address, or routing code; or

    (D)    telecommunication identifying information or access device (as defined in section 1029(e)).[4]

18 U.S.C. § 1028(d)(7) (emphasis added). Further, the term "produce" includes "manufacture, design, alter, authenticate, duplicate, or assemble." U.S.S.G. § 2B1.1, cmt. n.10(A).

As provided in the commentary to the Guidelines, the enhancement is warranted if a "defendant obtains an individual's name and social security number . . . and obtains a bank loan in that individual's name." § 2B1.1, cmt. n.10(C)(ii)(I). "In this example, the account number of the bank loan is the other means of identification that has been obtained unlawfully." *Id.* By contrast, the enhancement does not apply to a "defendant that uses a credit card from a stolen wallet only to make a purchase." *Id.* at cmt. n.10(C)(iii)(I).

Although we have not squarely addressed a similar challenge to the application of the enhancement in this particular context,[5] a plain reading of

---

[3] Section 1028(d)(7) broadly defines the term "means of identification." *See United States v. Weaver*, 866 F.3d 882, 884 n.2 (8th Cir. 2017). The section provides an illustrative—rather than exhaustive—list of examples of identifying information. *See Suchowolski*, 838 F.3d at 533; *accord United States v. Porter*, 745 F.3d 1035, 1046–47 (10th Cir. 2014).

[4] An "access device" includes any "account number . . . or other means of account access that can be used . . . to obtain money . . . [or] to initiate a transfer of funds." 18 U.S.C. § 1029(e)(1).

[5] Under plain-error review, our analysis would end here. Even if the district court erred, such error would not be plain because there is no controlling law. *See United States v.*

the Sentencing Guidelines; the broad, non-exhaustive nature of the "means of identification" definition in 18 U.S.C. 1028(d)(7); and a consideration of persuasive authority confirm that the district court did not err in its imposition of the § 2B1.1(b)(11)(C)(i) enhancement. Kalu unlawfully used each of the beneficiaries' Medicare information (indisputably a means of identification) to produce fraudulent health care claims to bill Medicare. Each fraudulent claim bears a unique, Medicare-issued claim number tied to a particular beneficiary (other means of identification). Medicare reimbursed Rhythmic based on these false claims.

Kalu's conduct is akin to the bank loan example in the Guideline's commentary—explicitly identified as conduct to which the enhancement applies. U.S.S.G. § 2B1.1 cmt. n.10(C)(ii)(I); *see also Suchowolski*, 838 F.3d at 533 (holding the use of a victim's social security number to open bank accounts [generating account routing numbers] to receive Social Security funds by direct deposit fell within the ambit of the enhancement); *United States v. Davis*, 324 F. App'x 395, 395 (5th Cir. 2009) (holding the district court did not plainly err in imposing the enhancement given the similarity between the bank loan account number example and the defendant's use of social security numbers to file fraudulent applications to obtain Federal Emergency Management Agency benefits). Like the bank loan account number, the Medicare claim numbers generated upon receipt of Kalu's fraudulent claims qualify as "means of identification" as contemplated by § 2B1.1(b)(10)(C)(i).

Correspondingly, in *United States v. Cooks,* we upheld the means of the identification enhancement, reasoning that "each mortgage loan number, like

---

*Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012); *see also United States v. Jackson*, 549 F.3d 963, 977 (5th Cir. 2008) (explaining that if relief "requires the extension of precedent, any potential error could not have been plain" (quoting *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005))).

a bank account number, is presumably unique, and thus traceable to the mortgagor." 589 F.3d 173, 186 (5th Cir. 2009); *accord United States v. Samet*, 200 F. App'x 15, 23 (2d Cir. 2006) (holding that a lease constitutes a "means of identification" within the meaning of the Guideline, reasoning that 18 U.S.C. § 1028(d)(7) and the Guideline bank loan example "focus on the generation of a unique identifying number . . . not on whether a document would be proffered as a form of identification"). Applying this same reasoning, because a Medicare claim number is unique and inextricably tied to a particular Medicare beneficiary, it was not erroneous for the district court to conclude that the claim numbers qualified as "means of identification," and that Kalu's offense thus warranted the two-level enhancement.

Turning to our sister circuit, *United States v. Gonzalez*, 644 F. App'x 456 (6th Cir. 2016) (unpublished), is directly on point, and, thus, particularly instructive. When presented with a factually analogous appeal, the Sixth Circuit in *Gonzalez* concluded that the § 2B1.1(b)(11)(C)(i) enhancement was properly applied.[6] 644 F. App'x at 465. In *Gonzalez*, the defendant submitted false claims to two insurance companies seeking reimbursement for medical injections that were purportedly administered to patients. *Id.* at 458. Affirming the application of the enhancement, the Sixth Circuit reasoned that the "names of the beneficiaries [first means of identification] were used to produce fraudulent health claims to obtain money." *Id.* at 465. "The fraudulent health claims, which bear unique numbers, were the second, or 'other,' means of

---

[6] *See also United States v. Johnson*, 658 F. App'x 244, 247 (6th Cir. 2016) (holding it was not plain error to apply the enhancement when the defendant used names and social security numbers to file false tax returns electronically, which generated unique document locater numbers for each return).

identification."[7] *Id.* We see no reason to disagree. Moreover, Kalu provides no authority which is on point and contrary.

Kalu's remaining arguments that the enhancement was erroneous are unavailing. Our court has affirmed the § 2B1.1(b)(11)(C)(i) enhancement outside the traditional context of "breeding" offenses. *See, e.g., Suchowolski,* 838 F.3d at 534; *United States v. Geeslin,* 236 F. App'x 885, 886–87 (5th Cir. 2007) (holding that a telephone number is a sufficiently unique "means of identification" to warrant the enhancement).[8] Moreover, the applicability of the enhancement to Kalu's offense is consistent with other cases that have upheld the application of the enhancement in health care fraud schemes. *See Chikere,* 751 F. App'x at 463–64 (plain error review); *Gonzalez,* 644 F. App'x at 465; *United States v. Vasquez,* 673 F.3d 680, 686–87 (7th Cir. 2012) (plain error review). Finally, Kalu's unsupported assertion that the enhancement only applies if the defendant has the specific intent to produce or obtain a second means of identification was abandoned at oral argument and, notwithstanding, is belied by the plain language of the enhancement and relevant caselaw.

---

[7] Further, the court rejected Gonzalez's argument that, because no beneficiary testified at trial, there was no proof that the use of the beneficiaries' means of identification was unauthorized. *Id.* Such testimony, the Sixth Circuit concluded, "would be of no consequence" because the "beneficiaries . . . could not have authorized submission of [fraudulent] claims when they had no legal authority to do so." *Id.* We approvingly cited this holding in *United States v. Chikere,* 751 F. App'x 456, 464 (5th Cir. 2018). In *Chikere,* we held that, without controlling precedent from this court and in light of other precedents, the district court did not commit *plain error* by applying the § 2B1.1(b)(11)(C)(i) enhancement to a health care fraud scheme that involved beneficiaries that permitted the use of their Medicare information for the unlawful purpose of submitting fraudulent Medicare claims. *Id.* at 463–64. The court noted in a footnote that "[t]here is no dispute that the Medicare information here is a 'means of identification,' 18 U.S.C. § 1028(d)(7), and any fraudulent health care claims would be the 'other means of identification.'" *Id.* at 463 n.1.

[8] *Accord United States v. Sash,* 396 F.3d 515, 524 (2d Cir. 2005) ("[N]othing in the commentary *requires* that identity theft or 'breeding' be found in order to apply the Enhancement, as the commentary merely states that the enhancement was 'principally'-as opposed to 'solely'-aimed at identity theft and 'breeding.'").

No. 18-20399

Next, Kalu challenges on appeal the district court's application of the two-level enhancement pursuant to § 2B1.1(b)(2)(A)(i), arguing that the offense did not involve 10 or more victims. Kalu does not dispute that his fraud offense involved 10 or more Medicare beneficiaries. Instead, he argues that the Medicare beneficiaries do not qualify as victims, insisting that Medicare is the only victim of his fraudulent scheme. As Kalu concedes, his argument is foreclosed by *United States v. Barson*, 845 F.3d 159, 167 (5th Cir. 2016) (holding "Medicare beneficiaries for whom [fraud] conspirators falsely claimed benefits [are] 'victims' under the guidelines").

AFFIRMED.